Commonwealth ex rel. Allegheny County *v.* Toth, Appellant.

Argued April 15, 1959. Before Rhodes, P. J., Hirt, Gunther, Wright, Woodside, Ervin, and Watkins, JJ.

*Kim Darragh,* for appellant.

*John F. Murphy,* Assistant County Solicitor, with him *Maurice Louik,* County Solicitor, for appellee.

OPINION BY WOODSIDE, J., June 10, 1959:

Edward J. Toth was sentenced by an alderman to pay a fine of $100 and costs for violating the Smoke Control Ordinance of Allegheny County. After appeal to the County Court of Allegheny County and a hearing de novo by that court, it sustained the conviction and sentence.

Toth then appealed to this Court contending that the section of the ordinance under which he was prosecuted was unconstitutional and that the evidence was insufficient to sustain the conviction.

The court below set forth the facts as follows:

"From the testimony at said hearing it can be established that defendant leased, in 1952, a certain tract of land in North Fayette Township, Allegheny County for coal-stripping purposes; that the Bureau of Smoke Control, on complaint received, investigating a burning fire on the leased premises of defendant on August 25, 1954; that said fire is a gob pile, or coal refuse pile, irregular in shape, approximately 200 feet long and 100 feet at its widest depth; that said fire is above the surface of the ground, exposed to the air setting forth smoke; that at the time of investigation defendant had equipment on the subject tract of land near the burning refuse pile; that said burning refuse

pile was in existence prior to defendant's entry on the leased premises; that the Bureau of Smoke Control, on August 25, 1954, advised defendant to abate and extinguish said fire; that considerable correspondence ensued between the Bureau and defendant about said fire and the manner of extinguishment; that defendant, on one occasion, did scoop refuse or dirt over the burning gob pile but without any success of abating the fire; that defendant has refused to abate said fire; and that said fire is still burning."

Appellant "is willing to accept the Court's resume of the facts."

The authority to regulate the production or emission of smoke is given the County of Allegheny in the Second Class County Code of July 28, 1953, P.L. 723 §2195 and §2197, 16 PS §5195, §5197. Prior thereto the authority was given to second class counties by the Act of May 28, 1943, P.L. 793 amended by the Act of May 9, 1947, P.L. 182.

The Smoke Control Ordinance adopted by the Board of County Commissioners of Allegheny County May 17, 1949, as amended July 12, 1955, provides in section 704 B and B(1) as follows:

"B. Open fires connected with the refuse from a coal mine, coal preparation plant, or other coal mining operation shall be governed as follows:

"(1) All persons responsible for areas and refuse in which open fires of this type still exist shall extinguish same by January 1, 1956, or show that due diligence is being exercised to accomplish such purpose."

The appellant contends that the above provisions do not apply to him as a lessee "who acquired his rights subsequent to the origin of the fire and who did not start the fire or contribute to it," and that if the provision does apply to him it "is unreasonable and confiscatory and a denial of due process."

The ordinance imposes a duty upon the "persons responsible for areas and refuse" to extinguish fires burning in the refuse. The "person responsible for" means the person answerable, accountable, or liable for. It does not mean the person who produced the refuse or caused the fire. See Webster's New International Dictionary, Second Edition (1956). The ordinance attempts to reach the only person who can carry out its mandate to extinguish the fire—that is the person who has control of the refuse pile. The appellant leased the area in 1952. Since that time he has been responsible for the area and refuse in which the fire has been burning.

When the amendment of July 12, 1955, required the fire to be extinguished before January 1, 1956, by the person responsible for the area, it required the appellant to extinguish the fire by that date, and his failure to extinguish it or to show that diligence was being used to accomplish such purpose constitutes a violation of the ordinance. It is immaterial that he does not have fee simple title to the area, or that he did not create the refuse pile or that he did not cause the fire. Certainly, if a person leased a house with a sidewalk containing a dangerous hole, it would become his duty to correct the dangerous condition within a reasonable time. Whether the hole was there before he leased the premises or was caused by another would be immaterial. There is sufficient evidence to sustain the finding that the appellant violated the ordinance.

The appellant does not challenge the legality of the Smoke Control Ordinance in its entirety. He recognizes the constitutional right of the legislature to regulate the production and emission of smoke into the atmosphere as a proper exercise of the police power in the field of public health. He does not question the statutory authority of the board of county commissioners to enact the ordinance. He does point out

that the ordinance and its enforcement must be reasonable in relation to the goal to be obtained, and he contends that as applied to the circumstances of his case the ordinance becomes an unreasonable exercise of the police power in violation of his constitutional rights. See *Abie State Bank v. Bryan,* 282 U.S. 765 (1931).

If the ordinance imposed an absolute duty upon all persons responsible for areas to extinguish all open fires connected with refuse from coal mines, it would be unreasonable and confiscatory under some circumstances. It is common knowledge that these fires exist in both the anthracite and bituminous areas of the Commonwealth and that some of them have burned for over a half century. It is also common knowledge that hundreds of thousands of dollars have been spent in an effort to extinguish some of these without success, and that these fires have been a matter of concern and study not only to industry and local authorities, but to state and federal authorities as well.

The smoke and obnoxious fumes emanating from these fires are injurious to the health of people and animals and damaging to property. But there must be a reasonable relationship between the evil to be corrected and the cost of correcting it. Persons cannot be required to expend sums on the areas involved if the expenditures required to accomplish the purpose would be confiscatory in nature. A law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case. *Gambone v. Commonwealth,* 375 Pa. 547, 551, 101 A. 2d 634 (1954).

Section 704 B(1) of the ordinance, however, is not unreasonable on its face. It does not contain an absolute requirement to extinguish the fire. It requires only that the persons responsible "show that due diligence is being exercised to accomplish such purpose."

This is a reasonable requirement. In effect it requires the persons responsible to do what is reasonable to accomplish the purpose and no more. It does not require them to do the impossible or to make expenditures which would be confiscatory. See *Gant v. Oklahoma City*, 289 U. S. 98 (1933); *Lehigh Valley R. R. v. Commissioners*, 278 U. S. 24 (1928).

The trial court by its holding found that the appellant did not exercise due diligence to extinguish the fire. The issue before us thus narrows to an examination of the record to determine whether there is evidence to support this finding. Upon examination of the record, we conclude that there is sufficient evidence to support the finding.

In August 1954, a complaint was made to the Director of the Allegheny County Smoke Control Bureau concerning the smoke emanating from the premises leased by appellant. After an examination of the premises by a bureau employe a letter with a copy of the ordinance was sent to the defendant asking for immediate action and requesting a report on what steps were being taken to extinguish the fire. The defendant's reply stated, inter alia, that "When the succeeding cut of dirt is thrown over into the burning pile, the fire will be smothered." Thereafter, according to the defendant, the bureau began to "badger" him about the fire. Representatives of the bureau called upon him at the coal stripping operation and at his home. Conferences were held in the bureau office and numerous letters were written. The defendant did throw dirt over the burning material which eliminated the smoke for several months, but thereafter it reoccurred. After that time "badgering" the defendant brought no further efforts from him to extinguish the fire and he was charged with the violation here in issue on February 21, 1957.

The defendant testified concerning the fire as follows:

"The Court: Q. Since 1954, have you just thrown up your hands and quit then with respect to putting out the fire? Have you done anything at all since if you recall you stated you smothered the fire with dirt? A. We haven't touched that area, but I might add whenever the coal is out of this particular operation and the entire area is back fill, that fire will take care of itself. When our dozers run over it, the fire will be put out. At the present time you cannot move the heated ashes or metal for a mine area; in other words, you will have to have the entire area mined. Q. That will be years? A. It will never burn out as far as that goes. As I say, when you back fill the area and move it around you will put it out."

The defendant spent approximately $3000 in the unsuccessful effort to extinguish the fire some years ago, but apparently has done *nothing* since 1954. Under his own testimony the fire could be extinguished, although it is not clear exactly what would be involved in work, time or cost. No experts were called to testify whether the fire could be extinguished, how it could be extinguished, or what it would cost to extinguish it. It may be that it would be impractical to do anything at this time, but the court is not required to reach such conclusion from the evidence before it. The court could conclude from the defendant's failure to do *anything* since 1954 that he did not exercise due diligence to extinguish the fire.

The ordinance provides that each day of violation is a separate offense. The bureau and the defendant should try to determine whether anything "reasonable" can be done to extinguish the fire, and the defendant should exercise due diligence in doing whatever is "reasonable." If the bureau again charges the defend-

ant with a violation, and he can establish by credible evidence that there is nothing practical and reasonable that can be done to extinguish the fire, he will have a valid defense to the charge.

Under the evidence in this case the court could find that the defendant had not been exercising due diligence to extinguish the fire and, therefore, we must sustain the conviction.

Judgment of sentence affirmed.