FRANK COBIN, d/b/a COBIN SALVAGE COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 71-334;

Fifth District—January 21, 1974.

G. MORAN, P. J., dissenting.

Wolff, Jones & Lawder, of Murphysboro, for petitioner.

William J. Scott, Attorney General, of Springfield (Thomas J. Immel and Thomas A. Cengel, Assistant Attorneys General, of counsel), for respondent.

Mr. JUSTICE JONES delivered the opinion of the court:

This is a petition for review of an order of the respondent Pollution Control Board imposing a fine of $3000 on petitioner, Frank Cobin, doing business as Cobin Salvage Company, and ordering the company to cease and desist open burning and the conduct of its salvage operation by open burning.

This case was initiated by a complaint filed by the Environmental Protection Agency (hereinafter referred to as respondent) pursuant to section 31(a) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, sec. 1001 et seq.) before the Pollution Control Board. The complaint alleged that the petitioner operated a salvage company in a manner which allowed the open burning of automobiles in violation of the Environmental Protection Act and rules and regulations adopted under it. It was also alleged that there was open burning to salvage copper wire at the salvage yard, also in violation of the Act and regulations. Four specific dates of alleged violations were stated in the complaint. Petitioner's answer to the complaint admitted the operation of the salvage yard but denied the other allegations. Prior to a hearing on the complaint petitioner filed a motion to dismiss on constitutional grounds, a demand for a jury trial, and a motion to transfer the case to the Circuit

Court of Jackson County. These motions were denied by the Pollution Control Board. Petitioner moved for a view of the premises. A ruling was not made on this motion. As related in the record and specified in the complaint, employees of the Environmental Protection Agency saw black smoke coming from the vicinity of the petitioner's salvage yard, proceeded to the salvage yard, and upon three occasions saw automobiles burning on the premises and on another occasion burning materials around coiled wire. At the close of the Agency's evidence petitioner moved that the Pollution Control Board enter judgment in its favor for the reason that the Environmental Protection Agency had failed to meet its burden of proof. The hearing officer referred the motion to the Board and directed the petitioner to proceed with its case.

The substance of petitioner's testimony, briefly stated, is that the Village of Dowell, Illinois has a population of 415; that the nearest city is DuQuoin, with a population of 6800; that the area of the Cobin Salvage Yard is approximately 13 acres; that the yard has been at its present site for 25 years; that there are 10 or 15 homes within a half-mile of the yard; that there are 15 to 20 employees at the yard; that other than a tavern and grocery store, the yard is the only business in Dowell; that no complaints from citizens have been made in regard to the operations at the yard; that Cobin Salvage Co. has a contract with the City of Murphysboro to take the city's abandoned cars; that there are many auto hulls in the area; and that one salvage yard operator went out of business because he couldn't comply with the law.

Following the hearing the Illinois Pollution Control Board issued an opinion and order which ordered the petitioner to cease and desist open burning and the conduct of his salvage operation by open burning. The Board also assessed a penalty in the amount of $3000 for violations of section 9(c) of the Act and sections 2—1.1 and 2—1.2 of the Board's rules and regulations. The Board specifically found that petitioner operated the salvage yard where the alleged violations occurred and that the testimony offered by the Agency confirmed that there was a salvage operation by open burning. The Board made no finding as to whether the operation of the Cobin Salvage Co. constituted "air pollution" as set forth in section 9(a) of the Act.

Petitioner raises a number of issues: Did failure of the Board to rule on the motion to view the premises constitute reversible error?; Are the definitions of "air pollution" and "open burning" in the Act so vague as to render the Act constitutionally invalid?; Should appellant's demand for a jury trial and motion to transfer the cause to the circuit court have been granted?; Did the Board take into account all relevant facts as required by section 33(c) of the Act?; Were the opinion and order of

the Board against the manifest weight of the evidence?; Were the findings of the Board based on incompetent evidence?; Is the Board's power to issue cease-and-desist orders violative of the constitutional prohibition against the taking or damaging of property without just compensation?; Is the grant of authority to the Board by the Act an unconstitutional delegation of legislative and judicial power?

■■ Did failure of the Board to rule on the motion made by petitioner for a viewing of the premises constitute reversible error? We believe it did not. The Pollution Control Board's rule 322 provides: "Upon motion of any party or upon the hearing officer's own motion, the hearing officer and any Board members present may view the premises in question * * *." Whether or not the premises shall be viewed is discretionary with the Board. While a ruling on petitioner's motion should have been made, we do not find that such failure was prejudicial. The Board cannot possibly view the premises in all cases on which it has to rule. Only when the circumstances are so unique that viewing the premises constitutes the only means of determining essential facts would it be an abuse of discretion for the Board not to view the premises. We do not regard the facts and circumstances in this case as unique. Furthermore, the Board based its findings on the violation of section 9(c) of the Act, which prohibits open burning, rather than on section 9(a) which prohibits air pollution. In proceeding under section 9(c) it was not necessary for the Board to make findings regarding the presence or degree of air pollution as required in section 9(a).

■■ Are the terms "air pollution" and "open burning" as used in the Environmental Protection Act so vague as to render the Act constitutionally invalid? We hold that they are not. Though the Board made no affirmative ruling regarding the violation of section 9(a) prohibiting air pollution, we have no hesitancy in stating that the legislative definition is sufficient. This question was considered and our view was expressed in *Southern Illinois Asphalt Co., Inc. v. Environmental Protection Agency,* 15 Ill.App.3d 66, 73, 303 N.E.2d 606, 612, where we stated: "We also find that the term 'air pollution', as defined by the Act, is definite and understandable and not vague and indefinite as contended by appellant. * * * In view of the broad range of the subject matter a more precise definition could hardly be constructed."

With regard to the definition of "open burning," section 9(c) states that no person shall

> "Cause or allow the opening burning of refuse, conduct any salvage operation by open burning, or cause or allow the burning of any refuse in any chamber not specifically designed for the

> purpose and approved by the Agency pursuant to regulations adopted by the Board under this Act; except that the Board may adopt regulations permitting open burning of refuse in certain cases upon a finding that no harm will result from such burning, or that any alternative method of disposing of such refuse would create a safety hazard so extreme as to justify the pollution that would result from such burning."

Respondent contends not only that the statute and rules, which essentially restate the wording of the statute, are understandable and clear, but that petitioner cites no possible instances of confusion that could result from attempts to interpret the section.

This case presents the first time that section 9(c) has been challenged on grounds of vagueness. While we find no authority in Illinois on this point, regulations prohibiting open burning in other jurisdictions have generally been sustained in the face of similar challenges. *Houston Compressed Steel Corp. v. State* (Tex. Civ. App. 1970), 456 S.W.2d 768, cited in *Southern Illinois Asphalt,* held that an air pollution regulation prohibiting open burning was not too vague to be enforcible against a scrap metal company that burned railroad boxcars in order to retrieve scrap metal. *Commonwealth ex rel. Allegheny County v. Toth,* 189 Pa. Super. 552, 152 A.2d 284, upheld a provision in a smoke control ordinance which required persons responsible for areas in which open burning of coal refuse was practiced to extinguish the same by a specified date or show due diligence. Supportive of this view also are *State v. Mundet Cork Corp.* (1952), 8 N.J. 359, 86 A.2d 1, *cert. denied,* 344 U.S. 819, and *Commonwealth v. Glen Alden Corp.* (1965), 418 Pa. 57, 210 A.2d 256. We hold, therefore, that the definition of open burning contained in section (c) is not so vague as to be unenforceable.

Did the Pollution Control Board rule correctly in denying petitioner's demand for a jury trial and motion to transfer to the circuit court?

Petitioner claims that his constitutional right to a trial by jury was violated by the Board's denial of his demand for a jury trial and motion to transfer to the circuit court, and by failure of the Act to provide for a jury in what he contends to be essentially criminal enforcement proceedings. Respondent argues that proceedings before the Board should not be characterized as criminal in nature, and thus no right to jury trial attaches.

Leaving to one side the question of whether this is a criminal proceeding, petitioner cites judicial and statutory authority for the proposition that a jury trial is required even if the proceeding is not found to be criminal. *Bullock v. Geomble,* 45 Ill. 218, and *Willis v. Legris,* 45

Ill. 289, both held a jury determination to be constitutionally required in cases involving levying of fines. It should be noted, however, that both cases preceded adoption of the fourteenth amendment; thus the operative statutory language under which these decisions were rendered was article XIII, section 6 of the 1848 Illinois Constitution, which guaranteed the right to trial by jury in all cases at law, regardless of the amount in controversy. That provision would be unworkable in the contemporary judicial system and has since disappeared from the Constitution. *Bullock* and *Willis* are also distinguishable in that they involve substantial questions of due process raised by the imposition of fines by informally constituted village tribunals.

■■ The 1970 Illinois Constitution, article I, section 13, now provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate." The language may seem ambiguous, but the courts have generally construed it as excluding special or statutory proceedings, unknown at common law, from the traditional guarantee of a jury trial. (*People ex rel. Keith v. Keith,* 38 Ill.2d 405, 231 N.E.2d 387.) The only rights which the section was intended to preserve are those pertaining to the right of trial by jury at common law and its essential features as known to the common law tradition. (*People v. Schoos,* 399 Ill. 527, 78 N.E.2d 245.) The Illinois Supreme Court held in *Lindsay v. Lindsay,* 257 Ill. 328, 100 N.E. 892, that it was not unconstitutional for the legislature to creat new rights and make provision for their determination without a jury.

The question remains whether petitioner is entitled to a jury trial because this proceeding is criminal in nature. Both respondent and petitioner vigorously contest this question, invoking the United States Constitutional Amendment VI, made applicable to the States by Amendment XIV, as well as the Illinois Constitution, article I, sections 2, 8 and 12. The amendments provide essentially that in "criminal prosecutions" the accused shall have the right to a speedy trial by an "impartial jury". The question is whether or not proceedings under the Act are properly deemed "criminal prosecutions".

Petitioner contends that the power granted to the Board to hear "criminal complaints" and assess penalties renders the proceeding criminal. Respondent points out the dual enforcement structure of the Act which provides for both civil and criminal remedies and observes that utilization of the civil remedy does not render the action criminal.

The following remedies are provided under the Act:

1. Section 42 authorizes the Board to impose penalties of up to $10,000 for violations, plus $1000 for each day the violation continues after the order. Penalties are recoverable in a civil action brought by the State's Attorney.

2. Section 42 authorizes the State's Attorney to seek an injunction to restrain further violations.

3. Section 42 also creates liability for destruction of fish and aquatic life, recoverable by the State's Attorney.

4. Section 43 allows the State's Attorney or Attorney General to seek an ex parte restraining order in emergencies.

5. Section 44 makes violations of the Act or rules adopted pursuant to its misdemeanors.

6. Section 45 preserves remedies in existence before adoption of the Act.

For all remedies except number 5, sections 31(a) and (b) provide for the filing of a complaint by any person or the Agency. The hearing provided is administrative and adjudicatory in nature. From the above listing it is clear that number 5 is only one of several alternatives which could be selected to remedy violations of the Act. Enforcement under one section does not imply enforcement of all sections; and rights which attach under one section do not necessarily attach when another section is involved.

■■ Moreover, the Act is not listed under the Criminal Code, and procedures described in it closely parallel civil, not criminal procedures. If petitioner is found to have violated section 9(c) he will not be liable to imprisonment, and no conviction for a misdemeanor will appear on his record. It is clear that criminal prosecution is an alternative remedy, not invoked here, and therefore not a subject for consideration on appeal. This same conclusion was reached in *Ford v. Environmental Protection Agency*, 9 Ill.App.3d 711, 292 N.E.2d 540, holding that the Act's denial of a jury trial in face of a challenge based on section 44 is not unconstitutional.

Did the Pollution Control Board meet the requirements of section 33(c) of the Environmental Protection Act? This section provides in essence that the Board shall take into consideration all relevant facts and circumstances which go to the reasonableness of the alleged practice, including the type of injury involved, the social or economic value of the practice, its suitability to the area, and the technology which would be required to reduce or eliminate it as a pollution source.

Petitioner reviews the uncontroverted testimony of his witnesses who reside in the vicinity of the salvage yard as to lack of harmful effect and contends that the Board failed to comply with section 33(c) in reaching its decision. Respondent argues that the factors listed in the subsection were considered by the Board in the nature of mitigating evidence. Petitioner seems to be saying that if section 33(c) is "satisfied," this con-

stitutes an affirmative defense to charges brought under other sections of the Act.

■■ The following statements from the Board's opinion show clearly that it did take note of section 33(c):

> "The Statute requires that we take into consideration the social and economic value of the pollution source and the technical practicability and economic reasonableness of reducing the emissions (Section 33(c)). We have concluded that no social or economic considerations suggest a continuation of Respondent's operation in violation of the law and that suitable legal alternatives are available that are both technically feasible and economically reasonable. * * *
>
> The fact that these obnoxious practices (open burning) have not constituted a severe nuisance in the area of Respondent's (Cobin's) facility is fortunate but not a defense. Were there a severe nuisance, the penalty imposed might have been worse.
>
> The Board is not unmindful of the problems created by abandoned and wrecked automobiles and the difficulty in their disposal. However, violation of the law is not the answer. Technology exists within the state enabling the disposal of auto bodies in compliance with the law."

It is clear that the Board took section 33(c) into account in the formulation of its opinion and order. The question remains as to whether or not the Board gave the statutory mandate proper weight. It is possible to argue, although respondent has not done so, that the process of considering section 33(c) is one which falls within the traditional rule of administrative discretion, limiting review to a determination of whether there has been an abuse of discretion by the Board. It is generally stated that in matters committed to the discretion of an administrative agency by law, a court will not substitute its judgment for that of the agency. (*Long v. County Board of School Trustees of Morgan County*, 15 Ill.App.2d 162, 145 N.E.2d 741; K. Davis, Administrative Law, sec. 28.05 (3d ed. 1972).) The argument could be made that unless an abuse of discretion is shown (a total failure to consider section 33(c) for example) the court may not inquire further once a prima facie showing of taking section 33(c) into account is made.

■■ There has been little litigation on this particular section since the Act was signed into law. In *Ford v. Environmental Protection Agency* the court held that it is not necessary for the Board to separately state its determination as to each of the factors enumerated in section 33(c) so long as the finding is generally supported by the evidence. *Ford* may be

distinguishable, however, because there the petitioner presented no evidence of a mitigating nature at the hearing. In *City of Monmouth v. Environmental Protection Agency*, 10 Ill.App.3d 823, 295 N.E.2d 136, the finding of the Board and its order were reversed. The court in that case noted that while the Board made findings as to technical practicability, no evidence on the point was offered by the respondent Environmental Protection Agency, and petitioner's alternative proposal was rejected without discussion. In the instant case, too, respondent did not offer evidence on the question of technology; but petitioner made no alternative suggestions and never applied for a variance. We hold that there was no abuse of discretion in the Board's consideration of section 33(c).

Were the opinion and order of the Pollution Control Board contrary to the manifest weight of the evidence?

Petitioner contends that evidence provided by respondent's witnesses does not support the finding of the Board that petitioner violated the Act. The rule in Illinois is that findings of agencies are deemed to be prima facie correct and on review, courts cannot disturb such findings unless they are against the manifest weight of the evidence. Ill. Rev. Stat. 1971, ch. 110, sec. 274; *Marion Power Shovel Co. v. Department of Revenue*, 42 Ill.2d 13, 244 N.E.2d 598; *Nagle v. Civil Service Com.*, 124 Ill.App.2d 186, 260 N.E.2d 354.

Respondent points out that the testimony of its witnesses as to the observation of burning in and smoke coming from the salvage yard is uncontroverted by petitioner in the record or in the briefs. The only specific point contested is that of Frank Cobin's connection with the salvage yard, which, it is contended, is not proved adequately by the testimony. However, as respondent notes in its brief, petitioner admitted such information in his answer to the complaint: "Respondent (Cobin) admits he has operated a salvage company known as Cobin Salvage Company located near Dowell, Illinois, on, before, and since July 1, 1970 * * *." Essentially the same admission is repeated in the answer. These statements, together with witness Walker's testimony as to his knowledge of the company, establish petitioner's connection with the company. Petitioner offered no contrary evidence on this point, beyond an unsupported denial, during the hearing or in the brief.

The essence of the finding by the Board is that petitioner conducted the salvage of automobiles and metal wire by open burning, and generally conducted a salvage operation by open burning, in violation of section 9(c) of the Act and Rules 2—1.1 and 2—1.2 adopted pursuant to section 26 of the Act. The following is a summary of testimony offered by the Agency to prove such violations: Witness Teske testified that he

saw three cars burning at the salvage yard on November 17, 1970. Witness Walker testified as to open burning on January 29, 1971. Although he could not identify precisely what was burned, he did observe burned metal and wire. This observation was confirmed by witness Asaturians, who was also present at the yard on January 28, 1971. Witness Gordon testified as to the open burning of cars at the yard on June 16, 1971. Witness Qazi testified as to the open burning of unidentifiable objects on June 23, 1971 at the yard. Witnesses Schmierback and Burroughs testified generally as to the knowledge of Cobin that such burning violated sections of the Act. All of this testimony remained uncontroverted at the close of the hearing. Evidence offered by Cobin generally went to issues of mitigation, such as lack of complaints by neighbors of the yard or benefit to the community. This evidence was admitted without Agency objection.

Petitioner contends there was nothing in the record to negate the proposition that the observed burnings, especially the one on January 28, 1971 observed by Walker, who testified that men were "poking at" the fire, were accidental; and that accidental open burnings are not violations of the Act. The recent case of *Bath, Inc. v. Pollution Control Board*, 10 Ill.App.3d 507, 294 N.E.2d 778, directly contradicts that contention. In *Bath* the operator of a sanitary landfill was found in a hearing before the Board to have violated rules adopted under the Refuse Disposal Act of 1966 which prohibited underground burning of refuse. Petitioner there argued for reversal on grounds that no affirmative acts were established to prove that he had started or maintained the burning. In rejecting this contention the court stated:

> "It is not an element of a violation of the rule that the burning was knowing or intentional. We hold that knowledge, intent or scienter is not an element of the case to be established by the Environmental Protection Agency at the hearing before the Pollution Control Board upon the issue of burning. In this connection, see 46 A.L.R.3d 758, and the cases there collected." 10 Ill.App.3d at 510.

■■ There appears to be authority to the contrary in Illinois, notwithstanding *Bath*. In *McIntyre v. Pollution Control Board*, 8 Ill.App.3d 1026, 291 N.E.2d 253, the court held that evidence as to the occurrence of between seven and nine fires in the defendant's salvage yard in five weeks was not sufficient to sustain violations charged in the absence of evidence of deliberate intent to set the fires. However, in that case the complaint charged that defendant had "knowingly, openly and notoriously * * * caused or allowed open burning." (8 Ill.App.3d at 1027.) No such lan-

guage is present in the complaint in the instant case, and therefore it seems clear that *McIntyre* is factually distinguishable, and that the *Bath* rule should be applied. We hold that petitioner had the burden of showing that the burnings were all accidental. This burden he did not meet.

Were the findings of the Pollution Control Board based on incompetent evidence in the record? Petitioner contends that in its opinion the Pollution Control Board relied on incompetent evidence from three witnesses. We have reviewed the testimony of these witnesses and if indeed that were the only testimony available to the Board, we would have to agree with the petitioner. The record discloses, however, that there was substantial testimony from several other witnesses and that the Board in fact relied on the testimony of these witnesses in formulating its opinion. The rule is well established that on review the court need only determine whether there was competent evidence to support the decision of the administrative agency. (*Bayer v. Zoning Board of Appeals,* 126 Ill.App.2d 374, 261 N.E.2d 791; *Lee v. Police Board,* 72 Ill.App.2d 134, 218 N.E.2d 783.) To restate the rule, there need only be some competent evidence in the record sufficient to support the agency finding. In the instant case the fact that the Board did not rely solely on the challenged evidence is adequate to dispose of the issue.

■■ Is the power granted to the Pollution Control Board by section 33(b) of the Act to issue cease-and-desist orders violative of the constitutional prohibition against the taking or damaging of property without compensation (United States Constitution Amendment XIV; Illinois Constitution, art. I, paragraphs 2 and 15)? Respondent justifies the grant of authority as a reasonable exercise of the police power of the state to secure the health and welfare of its citizens and cites the public policy of Illinois declared in Illinois Constitution, art. XI, paragraph 1 which states that it is "the public policy of the state and the duty of each person to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy."

This apparent conflict of constitutional statements has been resolved by the well-settled rule in Illinois that rights guaranteed by article I, paragraph 15 are subordinated to the interests of public welfare as expressed through the exercise of the police power. (*City of Chicago v. Birnbaum,* 49 Ill.2d 250, 274 N.E.2d 22; *Dube v. City of Chicago,* 7 Ill.2d 313, 131 N.E.2d 9, *cert. denied,* 350 U.S. 1013, 76 S.Ct. 658, 100 L.Ed. 873.) A recent case in the environmental area, *A. E. Staley Manufacturing Co. v. Environmental Protection Agency,* 8 Ill.App.3d 1018,

290 N.E.2d 892, expressly held that the exercise of the police power may constitutionally require individuals to expend funds in the interest of public health and welfare.

■■ The distinction between regulations of this type and condemnation under eminent domain is that, under the latter doctrine, private property is appropriated for public use, while under the form the use and enjoyment of the property by its owner is merely regulated by laws enacted to protect the general health and welfare. *East Side Levee & Sanitary District v. Mobile & O. R.R. Co.*, 279 Ill. 319, 116 N.E. 727.

The cases cited by petitioner in support of the contention that this is a taking which requires compensation are all distinguishable. The cease-and-desist order is a well-established enforcement procedure for administrative agencies. To say that the issuance of such orders by the Pollution Control Board would constitute a taking of property without due process would not only deny the Board an effective enforcement tool but would make violation of laws and regulations under the Environmental Protection Act a profitable enterprise.

Is the grant of authority to the Board by the Environmental Protection Act an unconstitutional delegation of legislative and judicial power? Except for the penalty provision of the Environmental Protection Act contained in section 42, we consider this question to have been adequately discussed and answered, namely that there is no unconstitutional delegation.

■■ With respect to the validity of section 42, which provides that "Any person who violates any provision of this Act, or any regulation adopted by the Board, or who violates any determination or order of the Board pursuant to this Act, shall be liable to a penalty of not to exceed $10,000 for said violation and an additional penalty of not to exceed $1,000 for each day during which violation continues, which may be recovered in a civil action, * * *" there is a split of authority in the Illinois Appellate Courts. In *Ford v. Environmental Protection Agency,* the court upheld the delegation of the right to impose penalties as a quasi-judicial function necessary to effectuate the purpose of the enabling legislation. *City of Monmouth v. Environmental Protection Agency* supports this view. But in *City of Waukegan v. Environmental Protection Agency,* 11 Ill.App.3d 189, 296 N.E.2d 102, the court held that the grant of power to impose variable fines is an unconstitutional delegation of judicial power. This court agreed with the holding in *City of Waukegan* in *Southern Illinois Asphalt Co. v. Environmental Protection Agency* where reasons for the holding are discussed in detail and authority cited.

We hold, therefore, that issuance of the cease-and-desist order was proper; that imposition of the monetary penalty was unconstitutional and void.

Affirmed in part. Reversed in part.

CREBS, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN dissenting in part: I concur in the majority opinion except for that part which holds section 42 of the Environmental Protection Act unconstitutional.