Ramey Borough, Appellant, *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Appellee.

602

Argued September 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate.

*John R. Carfley,* with him *Sharp & Carfley,* for appellant.

*Thomas M. Burke,* Special Assistant Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, October 29, 1974:

Ramey Borough appeals to this Court from an Environmental Hearing Board (EHB) adjudication affirming an April 16, 1973, Department of Environmental Resources (DER) order, which directed appellant to plan, design, construct and operate a sewage treatment facility for the Borough within time frames requiring completion of construction in 1976.

Approximately two hundred three (203) homes are situated in Ramey Borough. Of this number, one hundred thirteen (113) homes discharge their effluent via individual septic systems, while the remaining ninety (90) homes connect to a sewer system that discharges the untreated sewage into Little Muddy Run. As part of its order, DER stated that this discharge of effluent into Little Muddy Run constituted "pollution" as defined by Section 1 of The Clean Streams Law, Act of June 22, 1937, P. L. 1987, *as amended,* 35 P.S. §691.1.

Prior to and during the pendency of its appeal to the EHB, appellant, in compliance with paragraph (a) of the DER order requiring appellant to submit a proposal for a water treatment facility, secured the services of an engineering firm. This firm provided the Borough with estimates, based on 1973 prices, as to the approximate cost to the Borough of constructing a sew-

age treatment facility. In addition, as part of the engineer's report, the Borough received operational cost projections and other pertinent data necessary to comply with the DER order.

Appellant, despite initiating steps to comply with paragraph (a) of the DER order, appealed the order to the EHB. Following its adverse adjudication, this appeal was taken which raises three issues for our consideration.

Appellant first contends that the Commonwealth failed to introduce evidence at the EHB hearing from which the EHB could make a finding that appellant is discharging untreated sewage into a stream of this Commonwealth. Failure by the Commonwealth to introduce such evidence, reasons appellant, precludes the EHB from concluding that appellant is polluting Little Muddy Run in violation of the provisions of The Clean Streams Law, for want of substantial evidence to support such a conclusion.

Appellant accurately points out that the record does not disclose evidence introduced by DER that untreated sewage is being discharged into Little Muddy Run. However, evidence does, in fact, exist in the record, and affords an adequate basis for a conclusion by EHB that such pollution does exist. Appellant's own witness testified that ninety (90) homes in Ramey Borough are connected to a sewer system that discharges untreated sewage into Little Muddy Run. Having introduced such uncontradicted evidence through its own witness, appellant cannot now assert that the record is devoid of evidence to support a conclusion by EHB that appellant is polluting a stream of the Commonwealth.

At the EHB hearing, appellant introduced evidence of projected construction and operating costs, and attempted to establish, as a defense to the DER order, that it is economically impossible for appellant to construct a sewage treatment facility. The EHB received

testimony on this issue, but prefaced its reception by stating that economic impossibility was not an available defense to appellant at that time, citing *Commonwealth ex rel. Alessandroni v. Confluence Borough,* 427 Pa. 540, 234 A. 2d 852 (1966).

In *Confluence* the Supreme Court held that financial inability was not a defense to a mandamus action brought by the Commonwealth to secure compliance with a sewage treatment facility construction order. The Supreme Court indicated, however, that economic impossibility may be a factor to be considered by a court if the Commonwealth, in a later proceeding, attempted to enforce its judgment in mandamus.

We believe the rationale of *Confluence* is equally applicable to proceedings for administrative and judicial review of DER orders requiring the ultimate construction by a municipality of sewage treatment facilities to abate water pollution. If, as here, the municipality initiates administrative review of such an order and then pursues its right to judicial review of an adverse administrative adjudication, we can find no valid reason why, in such proceedings, it should be permitted to raise an issue of financial inability or economic impossibility to perform, the very issue a municipality was precluded from raising in *Confluence* in mandamus proceedings by the predecessary of DER to enforce an order from which no appeal had been taken. In two decisions predating *Confluence*, in which financial inability was raised in proceedings on judicial review of an administrative order, such a defense was similarly rejected. *Sanitary Water Board of Commonwealth of Pennsylvania v. Wilkes-Barre,* 199 Pa. Superior Ct. 492, 185 A. 2d 624 (1962); *Sanitary Water Bd. v. Boro of Coudersport,* 81 Dauph. 178 (1963).

Just as in proceedings by the Commonwealth to enforce a judgment in mandamus, proceedings by the Commonwealth to enforce an order of DER which has there-

tofore stood the test of administrative and judicial review on appeal, the issue of financial inability or economic impossibility may be a factor to be considered and evaluated by the Court. Such an issue will certainly be a factor to be considered by DER in determining whether judicial enforcement should then be sought as measured against then available or actual Federal and State grants for the project, more specific estimates or firm costs of construction and financing and available methods of financing, all of which would be speculative at best if such an issue were to be resolved in an administrative and judicial review of the DER order.

Confronted with fulfillment of the objectives and purposes of The Clean Streams Law and to not frustrate administrative action taken to abate the obvious health hazard of raw sewage entering the waters of the Commonwealth, we cannot now declare the futility of the administrative order, if otherwise valid, nor direct the EHB to consider it on the grounds of financial inability or economic impossibility of performance by the municipality. Such an issue must await the future.

Appellant finally contends that the DER order is unconstitutional because the requirement that appellant construct and operate a sewage treatment facility amounts to a confiscation of private property. This argument must fail for two reasons.

As noted above, at the current stage of the proceedings, the construction financing and operating cost projections are only estimates which may or may not prove to be accurate if and when the facility is actually constructed. Consequently, these estimates are speculative in nature, and a constitutional challenge cannot be sustained on the basis of supposition and speculation as to future events.

The second consideration raised by appellant's constitutional argument is its standing to assert same on

behalf of the residents and property owners of the Borough. The gravamen of appellant's constitutional argument is that the projected operating costs would require that property owners pay an estimated $250.00 tap-on fee and an additional $293.31 per year in maintenance costs. This amount, appellant asserts, is unreasonable and amounts to a confiscation of the individual Borough resident's property.

Assuming *arguendo* the accuracy of these estimated costs, the Borough does not have standing to assert what is essentially an individual property owner's claim. It is unnecessary at this time to fully explore what remedies, if any, are available to an individual whose property, he might allege, is confiscated. Suffice it to say that whatever remedies he does have are personal to the property owner and are inappropriately asserted by a third party without any interest in the property.

For the foregoing reasons, the decision of the Environmental Hearing Board is affirmed.

---

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent. I cannot agree that this Court is forced to preclude this small community from raising the defense of impossibility in a direct appeal from an order of the Environmental Hearing Board (Board) compelling construction of a sewage facility, the cost of which is over four times the total assessed valuation of the municipality. I do not believe that the cases cited by the majority, or common sense, necessarily compel such a result.

The majority relies on two appellate cases. The first of these is *Sanitary Water Board of Commonwealth of Pennsylvania v. Wilkes-Barre,* 199 Pa. Superior Ct. 492, 185 A. 2d 624 (1962), and reliance on it is not persuasive. In *Wilkes-Barre* the city was under an order which bears some resemblance to the one challenged in the instant case. Wilkes-Barre had been dumping large

quantities of raw sewage into the Susquehanna River for years until the Sanitary Water Board ( predecessor of the Department of Environmental Resources) ordered the discontinuance of the discharge, and the construction of an expensive sewage treatment facility.

The municipality argued that the decision of the Sanitary Water Board was "discriminatory, unjust, unreasonable, inequitable, economically inadvisable, and constitutes a waste of the taxpayers' money." 199 Pa. Superior Ct. at 499, 185 A. 2d at 627. This argument denounces a host of sins, but still seems quite distinct from the assertion here that construction of the sewage treatment facility is *impossible*. At the time of its appeal Wilkes-Barre was a city of over 63,000 population, and it is reasonable to assume that its municipal government had at its disposal the financial resources one would expect to find in a city of that size. Its assessed valuation, in all likelihood, ran into the tens (or perhaps even hundreds) of millions of dollars.[1] Wilkes-Barre's argument seemed to reflect its *unwillingness* to expend large sums of money on sewage treatment, but did not say that construction of the plant was *impossible*. Thus a conclusion that the *Wilkes-Barre* decision "rejected" the defense of impossibilty is not accurate.[2] The issue of impossibility was simply not before the Court in that case.

The second appellate case discussed in the majority opinion, and deemed to be controlling, is *Commonwealth*

---

[1] A careful review of the record in *Wilkes-Barre* fails to reveal any data on this point.

[2] The appellant's brief in *Wilkes-Barre* is devoid of argument suggesting impossibility. The city's primary contention was that mine subsidence in the general area made it unwise to construct the treatment plant, supporting pumping stations, and sewer lines. The brief articulates fears of excessive and regular damage from subsidence, with resultant high maintenance costs and loss of service for substantial lengths of time.

*ex rel. Alessandroni v. Confluence Borough,* 427 Pa. 540, 234 A. 2d 852 (1967). *Confluence* involved a mandamus action instituted by the Commonwealth to secure compliance with an order of the Sanitary Water Board directing construction of a sewage treatment facility. The municipality argued that while it was willing to comply with the order, it was unable to raise sufficient funds to pay for the construction. The Supreme Court held that this financial difficulty was not a defense to a mandamus action, but might be "a factor to be considered and evaluated by the court in any proceeding by the Commonwealth to enforce the judgment." 427 Pa. at 544, 234 A. 2d at 854.

It is conceded that if one takes a broad view of the applicability of the *Confluence* decision, it could be considered dispositive of the case before us; but, from my point of view, the majority's reliance on *Confluence* is unrealistic and leads to an impractical and unjust result.

The record in *Confluence* indicates that at the time of that litigation, the borough's population was approximately 1,000. Its assessed valuation was $459,000.00 and the *total* cost of the construction ordered by the Sanitary Water Board was between $300,000.00 and $400,000.00. The majority opinion in *Confluence* indicates that the failure of the municipality to exhaust all possibilities for federal or state aid for the project was a factor of some importance to the Court.[3] In what appears to be a key section of its opinion, the *Confluence* Court said: "The appellants' allegation that it is not financially feasible at this time for them to construct

---

[3] This seems to indicate an inconsistency within the *Confluence* opinion, since, if the Supreme Court really felt that impossibility was no defense, there seems to be no purpose served in discussing the merits of the impossibility claim. This inconsistency is noted by Justice ROBERTS, dissenting in *Confluence*. *See* 427 Pa. at 546, 234 A. 2d at 855.

sewage treatment works is not a sufficient basis to sustain their contention that a judgment in mandamus would be a 'futile act.' There is no indication in the pleadings that appellants have exhausted every possible avenue in an effort to find some way of financing this sewage construction. The problem of water pollution has deeply troubled our federal and state governments for many years. In response to these problems there have been and will continue to be a number of governmental programs designed to alleviate these conditions. New methods of financing in this area are being developed constantly for those who heretofore have been unable to raise the necessary funds. Moreover, while we recognize that the procuring of suitable financing may be fraught with many difficulties, the appellants still have not demonstrated *to our satisfaction* that it would be a 'futile act' to require them to comply with the order of the court below." 427 Pa. at 543-44, 234 A. 2d at 853-54. (Emphasis added.)

Bearing in mind that the total real estate tax base of Confluence Borough was $459,000.00 and the *total* cost of constructing the plant was only a maximum of $400,000.00, a comparison to the facts of the instant case yields a dramatic contrast.

The record in this case explicitly presents the dismal demographic and financial condition of Ramey Borough (Ramey), which is located in the heart of the economically depressed rural soft coal area of central Pennsylvania. In Ramey's approximate one square mile area, it has about 500 people living in about 203 homes. Ramey has no industry, no public institutions and almost no employment. On the positive side of the ledger, Ramey has two gasoline stations and a laundromat. There are 342 parcels of real estate with a total 1973 assessed valuation of $399,296.00. There are 334 persons on the per capita tax rolls with 204 owning realty. There are 37 people living on a fixed pension or social

security. There are 42 widows or unmarried women working part-time elsewhere, or living on a fixed income. There are only 77 working residents who own property, and 37 of them are over 50 years of age. Population continues to decline, and 17 properties are unoccupied. Only 193 persons are on the wage tax rolls, and Ramey's general budget for 1973 was only $8,019.96. With these record facts established, Ramey has been ordered to construct (and complete within 15 months) a sewage treatment facility estimated to cost $1,300-000.00. From my point of view, based on this record, the order of DER is unreasonable and presents a classic example of impossibility which this Court, at this stage in the proceedings, should recognize.

It is important to note that the adjudication of the Board even suggested that performance may be impossible in this case. The Board noted that even with the possibility of grants of 75% from the state and federal governments, Ramey's portion of the project cost would be a figure well in excess of the total assessed value of the entire borough. This fact prompted a response from the author of the Board's adjudication, who, speaking for the Board, said:

"We have seen other cases where the total cost of a sewer system exceeds the total assessed valuation of a municipality . . . but this is the first case the writer recalls *where the municipality's 25% share of that cost was grater* [sic] *than the total assessed valuation of the municipality*—meaning that the total cost is more than *four times* the total assessed valuation!" (Citations omitted.)

"The decisional law is clear that there is no judicial solution to Ramey Borough's problem . . . . We therefore dismiss this appeal. On the other hand, given the cost and land value figures, we have some doubts whether Ramey will be able to get together the necessary money to actually be able to comply with the De-

partment's Order." (Reference omitted.) (Emphasis in original.)

The extreme facts of this case, pointed out above, make it distinguishable from the situation found in *Confluence*, and I believe that there is a reasonable basis for believing that the Supreme Court would consider the facts of this case as presenting a new question.

I have no reservation that the Legislature, under the police powers, may control or eliminate the discharge of polluting sewage into the waters of the Commonwealth; but these powers are not absolute. They are subject to judicial review. As laudable as the purposes of The Clean Streams Act are, they still must meet the test of reasonableness, under the facts of each case submitted for judicial review. It is still the law of this Commonwealth that "[A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case. . . ." *Gambone v. Commonwealth,* 375 Pa. 547, 551, 101 A. 2d 634, 637 (1954). In our shower of exuberance to clean the streams we should not wash away the tests of reasonableness and possibility of compliance. It is still the law of the land that one of the reasonableness tests is the balancing of the cost incurred against the benefit to be derived or the evil to be avoided. *See Goldblatt v. Town of Hempstead,* 369 U.S. 590 (1962); *Lehigh Valley R. Co. v. Board of Public Utility Commissioners,* 278 U.S. 24 (1928); *Pyeatte v. Board of Regents of University of Oklahoma,* 102 F. Supp. 407 (W.D. Okla. 1951), aff'd, 342 U.S. 936 (1952); *Commonwealth ex rel. Allegheny County v. Toth,* 189 Pa. Superior Ct. 552, 152 A. 2d 284 (1959). Counsel for DER, at the argument in the case before us, quite frankly stated that even if the sewer project for Ramey would cost an absolutely impossible ten million dollars, we should still affirm the Board. The majority agrees; I cannot. *See* Statutory Construction Act of 1972, 1 Pa. C.S. §1922(1).

It is difficult for me to believe that the Supreme Court would bar a municipality from raising the issue of clear impossibility at the onset of litigation when the allegations, if proven, show a total inability to perform. Under the majority's application of *Confluence*, the municipality is totally precluded from raising any question of impossibility until *after* contempt proceedings are instituted. I believe a line should be drawn somewhere to avoid pointless legal proceedings and expense when a municipality alleges and proves a total and clear inability to comply with a pollution abatement order.

In *Confluence* the municipality cited *Commonwealth ex rel. McLaughlin v. Erie County*, 375 Pa. 344, 100 A. 2d 601 (1953), where the Court said: "It is a fundamental principle that mandamus will not issue, as a rule, where it is apparent that the writ will be futile or ineffectual by reason of the inability of the respondent to comply therewith." 375 Pa. at 350, 100 A. 2d at 604. The *Confluence* Court distinguished *Erie* by noting that the fund in question was no longer in existence, and mandamus obviously could not compel the disbursement of monies from a nonexistent fund. It seems to me that inability to perform may result from many different types of circumstances. If the officials in *Erie* could not disburse funds that did not exist, how is this distinguishable from this case where Ramey cannot pay for a sewage plant because there are no funds with which to construct it? I see no distinction. While the line between hardship and impossibility may at times be hard to draw or to define, I believe Ramey's situation demonstrates the latter.[4]

---

[4] Section 3(a) of Ramey's Notice of Appeal to the Board alleges that the order of the Department of Environmental Resources is "incapable of performance." I am in no way commenting upon the final determination of Ramey's contention that compliance is impossible. My position is only that Ramey should have been allowed

Justice ROBERTS, joined by Chief Justice BELL, filed a vigorous and persuasive dissent in *Confluence*. In response to the majority's palliative statement that impossibility might be asserted in a subsequent contempt proceeding, Justice ROBERTS said: "I submit that to hold a defense valid in a contempt proceeding to enforce the same mandamus whose original issuance could not have been avoided by interposing that same defense would be absolute judicial folly." 427 Pa. at 547, 234 A. 2d at 855. I agree. Whether in a mandamus action or in an enforcement proceeding, the procedure which the majority in the instant case seems to approve is unnecessarily wasteful in time, effort, and expense to the litigants, the courts, and, ultimately, to the taxpayers. A valid civil contempt cannot be sustained if the court finds that the act required for compliance is impossible for the alleged contemnor to perform, through no fault of his own. *Commonwealth of Pennsylvania, Department of Environmental Resources v. Pennsylvania Power Company*, 12 Pa. Commonwealth Ct. 212, 224-25, 316 A. 2d 96, 103 (1974).[5] Just as the majority "can find no valid reason why, in such proceedings [the borough] should be permitted to raise an issue of financial inability . . . to perform," I can find no sensible reason why Ramey should *not* be permitted to make a showing of impossibility to perform.[6]

---

to raise the issue before the Board, and the Board should have resolved it.

[5] It is interesting to note that the Department of Environmental Resources in *Pennsylvania Power Company*, argued, contrary to its position in this case, that the issue of impossibility was not a justiciable issue in a contempt proceeding because the regulated company had not raised the issue of impossibility at the original hearing.

6 The principle of raising hardship (in an analogous situation) as a defense to the issuance of an *injunction* is not without precedent. In *Commonwealth of Pennsylvania v. Wyeth Laboratories*, 12 Pa. Commonwealth Ct. 227, 315 A. 2d 648 (1974), the Commonwealth sought an injunction to prevent violation of The Clean Streams

Further, as the Board pointed out, "If the money cannot be obtained, the sewer system will not be built, regardless of what the law says. And if it is enough of a hardship, construction may be put off for a long time."

In summary, I believe that *Confluence, supra,* is, at the very least, arguably distinguishable from the instant case. To deem it controlling here results in unnecessary waste and, in effect, probably postpones the day when a realistic solution will be found to the pollution emanating from Ramey Borough. If the facts are as Ramey would have us believe, any further litigation would be pointless. I believe Ramey should have been permitted to litigate the issue of impossibility in its appeal to the Board, and I would, therefore, remand this case back to the Board for findings and conclusions on the issue of impossibility.

---

Law, Act of June 22, 1937, P. L. 1987, *as amended*, 35 P.S. §691.1 et seq. This is the same statute involved in the instant case. It should also be noted that, for our purposes, the practical effect of a mandatory injunction is the same as the effect of a valid administrative abatement order. In *Wyeth*, we said: "The case law in Pennsylvania is clear that a landowner enjoys the right to use his own property in a lawful and natural manner even though damages occur as a result of the lawful and natural use. While, under certain circumstances, he may also have a corresponding duty to abate a nuisance created as a result of a lawful use, if the resulting damage to another because of the nuisance cannot be avoided, or only at such expense as would be practically prohibitive to a person in the enjoyment of his own land, he may not be required to abate the nuisance. Beecher v. Dull, 294 Pa. 17, 21, 143 A. 498, 499 (1928) ; McCune v. Pittsburgh & B. C. Co., 238 Pa. 83, 89, 85 A. 1102, 1104 (1913). This being the law, it was very proper for the court below to take the obvious step of retaining jurisdiction to inquire into whether the resulting damage could be avoided and whether the expense to abate would be practically prohibitive." 12 Pa. Commonwealth Ct. at 236-37, 315 A. 2d at 653.

Thus, in *Wyeth* we sanctioned the lower court's refusal to issue the injunction until after it determined the possibiliy of compliance with The Clean Streams Law.