A. E. STALEY MANUFACTURING COMPANY, Petitioner-Appellant, *v.* ENVIRONMENTAL PROTECTION AGENCY *et al.,* Respondents-Appellees.

(No. 11842; ▮▮▮▮▮▮)

Fourth District—December 13, 1972.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, (Jerald E. Jackson and E. R. Stanhope, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, (Thomas J. Immel and Thomas A. Cengel, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This appeal is by the petitioner as one adversely affected or threatened by a rule or regulation of the Illinois Pollution Control Board under the provisions of Ill. Rev. Stat. 1971, ch. 111½, pars. 1029 and 1041. The appeal questions new provisions added on March 7, 1972 to the rules and regulations relating to water pollution. The appeal was taken on April 12 and was filed within 35 days after the adoption of the rules and regulations as required by the statute. It is the position of the petitioner that the Illinois Environmental Protection Act limits the authority of the Illinois Pollution Control Board to the control of contaminants discharged directly into the waters of the State, and specifically that the Board does not have the authority to control discharges into sanitary sewers which are tributary to a sanitary treatment plant.

The petitioner owns and operates a soybean and food processing plant located in the city of Decatur. In connection with this operation, the petitioner has constructed, owns and operates more than one mile of sewer lines located wholly within the boundaries of its private property. It performs some preliminary treatment on the material placed in its private sewer before the contents of the sewer, including certain untreated materials, are discharged into the sanitary sewer owned, operated and maintained by the Decatur Sanitary District. This district apparently operates a modern sewerage treatment works or plant and discharges its effluent into the Sangamon River below the dam which impounds the waters of Lake Decatur.

The provisions of the Environmental Control Act are cited in Ill. Rev. Stat. 1971, ch. 111½, pars. 1001 through 1051, and for convenience each paragraph referred to will carry its statutory paragraph number. It should be noted that par. 1011 does not prohibit the discharge of contaminants into the waters of the State, but actually permits it, provided that such contaminants have been "given the degree of treatment or control necessary to prevent pollution". Paragraph 1003 (n) states "'Water pollution' is such alteration of the physical, thermal, chemical, biological or radioactive properties of any waters of the State, or such discharge

of any contaminant into any waters of the State, as will or is likely to create a nuisance or render such waters harmful or detrimental or injurious to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate uses, or to livestock, wild animals, birds, fish or other acquatic life". Paragraph 1003 (o) states " 'Waters' means all accumulations of water, surface and underground, natural and artificial, public and private, or parts thereof, which are wholly or partially within, flow through, or border upon this State".

It is the position of the petitioner that the legislature has cogently stated its purposes in terms of enhancing the purity of the *waters of this State*. Petitioner agrees that the statute has authorized the Pollution Control Board to take action in connection with the discharge of contaminants "into the waters of this State". Thus, the extent of the control, it is argued, is to regulate the discharge of contaminants at the point where they reach the waters of this State. This position clearly suggests and indeed it charges that the control of the Pollution Control Board is limited to the last actor in the discharge of contaminants into the waters of the State. It would follow that any regulation going beyond the last-actor limitation is beyond the power of the Illinois Pollution Control Board. Petitioner is not a last actor. It is argued that any attempt to exercise control beyond such limits are not regulations or are not rules and regulations implementing authority given but is substantive legislation by administrative rule and is without legitimate statutory parentage.

In Part VII of the Rules and Regulations, the Board extends it authority to discharges which go into sanitary sewers rather than into the waters of the State and secs. 701, 702 and 703 of such rules prescribes and restricts the types, concentrations and quantities of contaminants which can be discharged into such sewer systems. Part IX of the Rules and Regulations covers, permits and states that it establishes basic rules for the issuance of permits for the construction, modification and operation of treatment works, sewers, waste-water sources and other discharges. These too are not limited to one who discharges contaminants into the waters of this State. Section 904 of the Rules and Regulations provides that no person who owns and operates an inter-connected system of sanitary sewers and/or combines sewers consisting of more than one mile of pipe shall cause or allow the use or operation of part or all of that system of sewers after December 31, 1974, without an operating permit issued by the Agency. This section is apparently applicable regardless of whether the sewer is privately-owned and is located entirely on private property and irrespective of whether it dis-

charges its effluent into a municipally-operated sanitary sewer rather than into the waters of the State.

The position taken by the petitioner here is it seems to us unduly restrictive. There is a realistic and practical nexus between controlling what flows into a sewer treatment plant and what flows out of that plant and pollutes the waters of the State. Indeed the petitioner states that some of the contaminants poured into its own sewer are treated and some are not. Indeed Ill. Rev. Stat. 1971, ch. 24, par. 11—141—4, recognizes that controlling what goes into a sewer system is a practical method of controlling the final effluent. The efficiency, sufficiency, adequacy and capacity of a specified sewer treatment plant are obviously controlled and patently affected by what goes into such plant. In such manner only, it would seem, can the legislative declaration contained in par. 1011 assure that no contaminants are discharged into the waters without being given the degree of treatment or control necesary to prevent pollution.

In like manner, under par. 1013 (i), the authority is given to provide "standards for equipment and procedures for monitoring contaminants discharged at their sources, the collection of samples and the collection, reporting and retention of data resulting from such monitoring". The petitioner concedes that it engages in treatment of some, but not all, of the contaminants it discharges into its own sewer system and thus by its own statement concedes that in the furtherance of its industry, it discharges contaminants into its sewer system. Breakage of its sewer system or line might well discharge dangerous contaminants into the underground water systems of the State and the Act seeks to and does control both the surface and subsurface waters of the State. Thus, it would seem to follow that the effective administration of the Act requires jurisdiction to a degree over private sewer systems for two reasons: (1) to protect underground waters of the State and (2) to determine whether or not the Decatur treatment plant which receives the Staley effluent is adequate to provides that degree of treatment or control necessary to prevent water pollution. In short, when the Pollution Control Board undertakes to define "waste-water source" and specifically excludes sewers, it seeks to distinguish between sources which do and those which do not flow into a sanitary treatment plant. Under par. 1011, the Board has the authority to regulate both types of sources. Petitioner is regulated by one type of waste-water; others may be regulated by another type of waste-water, because par. 1003 (o) speaks in terms of all accumulations of water, surface and underground, natural and artificial, public and private, or parts thereof. Thus the control of the Pollution Control Board over petitioner's sewer is only to the extent reasonably required to effectuate the purposes of the Act.

Petitioner likewise charges that the legislature previously delegated the control of sewers to the corporate authorities of the municipal corporation which owns the sewers. (Ill. Rev. Stat. 1971, ch. 24, pars. 11—20—10, 11—109—1 and 11—141—7.) The waste from an industrial plant discharged into the public sewers of a municipality was without question subject to control by the municipality. (*Village of Fox River Grove v. Aluminum Coil Anodizing Corp.*, 114 Ill.App.2d 226 (1969, 252 N.E.2d 225.) This, the petitioner argues, indicates the legislative intention that only municipal corporations shall control sewers and sewage treatment plants. It thus concludes that the Decatur Sanitary District has the exclusive authority to regulate sewer lines on private property where they are tributary to municipal sewers and treatment plants. By extending its authority into this area, the Pollution Control Board clearly acts *ultra vires* and usurps the authority specifically reserved to the municipal corporation. The difficulty with this position is that the same Municipal Code which grants this authority provides in Ill. Rev. Stat. 1971, ch. 24, par. 1—9—1, in part as follows: "But the provisions of this Code shall not be considered as impairing, altering, modifying, or repealing any of the jurisdiction or powers possessed by any department, board, commission, or officer of the state government immediately prior to the effective date of this Code." This proviso suggests that the legislature did not intend to usurp the authority of state agencies to operate in the same area prior to the effective date of the Code. To hold that this sharing of power applies only to a date prior to the adoption of the Municipal Code would seem to create an ante and post group of municipalities. To so hold would appear to defeat the General Assembly's expressed intention "to establish a unified State-wide program for environmental protection". How a program can be unified throughout the State if municipalities are divided into two groups so far as sharing of power is concerned is, we think, expressly negated and par. 1—9—1 is intended to delineate the areas of mutual operation as it existed on that date. It was not intended as a restriction.

■■ There is no dispute between the parties but that administrative agencies are limited to the powers vested in them by statute and their rules and regulations are valid only when they are in the furtherance of the intention of the legislature as stated within the four corners of the statute. (*People ex rel. Ill. Highway Transportation Co. v. Biggs*, 402 Ill. 401, 84 N.E.2d 372.) A rule or regulation to be valid may only implement the law, and regulations are valid only as subordinate rules and when found to be within the framework of the policy which the legislature has sufficiently defined. They are valid and binding only when they are in the furtherance of the intention of the legislature as evidence by

its Act. (2 Am.Jur.2d, Administrative Law, Sec. 300.) A corollary of this proposition also is that where there is an express grant of authority, there is likewise the clear and express grant of power to do all that is reasonably necessary to execute the power or perform the duty specifically conferred. (*Owens v. Green*, 400 Ill. 380, 81 N.E.2d 149.) The parties are not in disagreement on these basic principles, but only in their application.

We think we should note that waters from a privately-owned property may get into the waters of this State without any treatment by way of the ordinary storm sewer and may contain contaminants. Secondly, water with contaminants may get into the waters of this State following treatment by municipally-owned sewer and treatment plants. Thirdly, contaminants may get into the waters of this State through private sewers without going through a municipally-owned treatment plant but directly into the waters of the State from septic tanks, or fourthly, the situation that pollution may get into the waters of his State through a privately-owned sewer emptying into a municipally-owned treatment plant and this is the situation with which we here deal. It is, of course, obvious that the Act is designed to control pollution irrespective of its source. The issue here then is whether or not it is reasonably required that the Pollution Control Board exercise some supervision over the sewers of the plaintiff in order to perform the duties imposed upon it by the legislature in the Environmental Control Act. If the petitioner is adequately removing the contaminants released through its sewers so that it is adequately treated and no pollution gets into the waters of the State, petitioner has no problem. We cannot assume that it will be unreasonably or arbitrarily treated by the Board.

■■ The argument that the Pollution Control Board has placed upon them unilaterally the duty to assume the vast expense of money in their own sewer system is nothing unique in modern society. The proper exercise of the police power of the State has long been recognized and certainly in this day and age it cannot be denied that it sometimes requires individuals to expend funds in the interests of the public health and welfare. A single glance at the plumbing and electrical codes imposed by city and state is sufficient to point up this fact. We therefore conclude here that the Pollution Control Board has the power to compel this petitioner to adequately treat its contaminants before it reaches the sewage treatment plant of the Decatur Sanitary District and has that power as fully and effectively as it would have if the same sewer system of the petitioner was discharging its effluent directly into the waters of this State.

Accordingly, the March 7, 1972 regulations of the Environmental Con-

trol Board apply to the petitioner. The Pollution Control Board on request refused to stay the application of these rules to the petitioner pending the appeal in this court. This refusal impinges upon petitioner's right to his day in court. We took the petitioner's motion to extend the time with the case. It is now ordered that the motion for stay be allowed until 60 days after the order of this court becomes final in this court through a denial of a petition for rehearing or the granting of a certificate of importance or until a stay is granted or denied by any other court of competent jurisdiction.

The order of the Pollution Control Board is affirmed with its enforcement as against the petitioner stayed as herein indicated.

Order affirmed.

CRAVEN, P. J., and SIMKINS, J., concur.