THE CITY OF CHAMPAIGN, Petitioner-Cross Respondent, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents-Cross Respondents—(The Board of Trustees of the University of Illinois, Respondent-Cross Petitioner.)

(No. 11651;

Fourth District—July 5, 1973.

CRAVEN, P. J., dissenting.

Albert Tuxhorn, City Attorney, of Champaign, (James W. Evans, Assistant City Attorney, of counsel,) for petitioner.

William J. Scott, Attorney General, of Springfield, and James J. Costello, of Urbana, (Thomas J. Immel and Frederick C. Hopper, Assistant Attorneys General, and Donald V. Dobbins, of counsel,) for respondents.

Frank M. Pfe'fer and Thomas W. Kelty, of Illinois Municipal League, of Springfield, for *amicus curiae.*

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from an order of the Illinois Pollution Control Board originating in administrative proceedings before that Board initiated by complaint of the Environmental Protection Agency against the cities of Champaign and Urbana. Urbana's motion for severance was granted. The City of Champaign and the University of Illinois seek review directly in this court under the provisions of section 41 of the Environmental Protection Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1041.) For sake of brevity, we will refer to the City of Champaign as the "City"; the Environmental Protection Agency as "EPA"; the Pollution Control Board as the "Board"; Alpha Material and Fuel Company as "Alpha"; and the Board of Trustees of the University of Illinois as the "University". The underlying basic issue as charged is that the City caused or allowed water pollution on certain dates by permitting contaminants to enter the Boneyard Creek. The Boneyard Creek is a natural water course meandering through the corporate limits of the City and into it runs the surface waters of a part of the City and into it water is delivered from separate storm sewers owned and maintained by the City. The lower terminus of the Boneyard Creek is its junction with the West Branch of the Salt Fork of the Vermilion River. A barrage of constitutional and procedural deficiencies is leveled at the Act creating the EPA. Our discussion will be limited to a determination of those issues only which are necessary to a disposition of this case.

At the outset the stance of the EPA in this court is that it is an innovative administrative body witth a new approach and new procedures in the solution of one of society's many problems. It is sug-

gested that it is an innovative administrative body with powers not necessarily subject to either civil or criminal rules as they are normally understood. However innovative it may be, we do not believe the legislature intended to create a legalistic gadfly unrestricted by well recognized constitutional, civil and criminal procedures.

The City filed a motion before the Board to bring in additional parties respondent. This motion was allowed and the City was directed by the hearing officer to file a third-party complaint against Alpha and the University. Alpha was charged with the discharge of contaminants on September 21—an apparently single-shot violation—and a cease and desist order was entered against it in the Board's final order. Alpha does not appeal.

■■ The University was charged by the City in the third-party complaint with contributing to the pollution through the operation of its Abbott Power Plant on August 7 and August 18 and sought to transfer its responsibility to the University. The EPA stipulated to the truth of the University's claim "that the University has been, is now and will continue to be developing a sound engineering plan for the disposal of waste water which will meet the requirements of the EPA Act." In addition, under section 47(a) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1047(a)), the State of Illinois and all of its agencies are required to comply with the provisions and regulations adopted under the Act, and each agency or institution is required to annually assess the environmental problems created by its operations and to report to the EPA on or before December 1 of each year. Under section 47(c) of the Act, each such agency is required to file with the EPA the plans, specifications and cost estimates for any proposed installation of facilities that may cause a violation of the Act or the regulations adopted thereunder. From anything charged by the EPA against the University, we cannot assume that there will be a violation of these provisions by the University. Furthermore on the two dates specified in the third-party complaint the Board specifically found that a pollutional discharge into the Boneyard Creek did occur on August 7, but that there was no proof by any party to substantiate the claim that the Abbott Power Plant was the source of that pollution. The Board also found that the allegations of pollution occurring on August 18 were not established. Procedural simplicity and procedural exactitude suggest that if the Abbott Power Plant of the University is contributing to the pollution of the Boneyard Creek, it can and should be established by appropriate pleadings and appropriate proof. The pollution charged was not established and the Board so found. The Board further stipulated that the University was in effect doing all it could to abate any pollution that

might result and lastly the order of the Board only required the University to comply with the statute above stated without any finding that such an order was either necessary or required. There was no justiciable issue between the Board and the University and the order against the University on this record was an exercise in futility.

The Illinois Municipal League has filed its *amicus curiae* brief, which along with the briefs of the other parties attacks the constitutionality of the Environmental Protection Act on many grounds. Most, if not all, of the constitutional questions so raised are not reached on this record. No monetary sanctions or penalties have been imposed against either the University, the City or Alpha. The time required for the parties to make reports under the Board order has expired and those issues are now moot. In addition, paragraph 4 of the order states that "upon receipt of the above required reports, the Board will decide what further proceedings are appropriate." What if any final order may be entered by the Board is at this point in limbo.

■■ The order does require the City to submit to the Board "a detailed program for the policing of Boneyard Creek and of its storm sewers in order to prevent the discharge of unnecessary pollutants into the creek from the storm sewer system operated and maintained by the City." This record indicates that the City does own storm sewers which empty into Boneyard Creek and that street surface water of the City finds its way into Boneyard Creek. The City contracted with the Urbana-Champaign Sanitary District in 1949 for the Sanitary District "to provide and keep in repair an adequate system of storm sewer drainage therein and to correct any unsanitary and unhealthful conditions existing therein." Until after the City files its program for policing the discharge of unnecessary pollutants into Boneyard Creek, there can be no appropriate determination whether or not or to what extent the responsibility rests with the City or other parties nor any basis to determine if, when, how or by whom the Boneyard may be made pure. We think the action of the Board must be within the pleadings, supported by the evidence and present a justiciable issue. See *City of Monmouth v. Environmental Protection Agency*, 10 Ill.App.3d 823, 295 N.E.2d 136.

■■ Its order as to the University is vacated and for naught held. Its order as to the City is vacated and the cause remanded for such further proceedings as may now be deemed proper and appropriate within the scope of existing or appropriate supplemental pleadings and evidence.

Reversed in part; reversed and remanded in part.

SIMKINS, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN dissenting:

This appeal should be dismissed for want of a final appealable order and because the issues are moot.

This court reviews *final* orders of the Pollution Control Board by reason of the provisions of section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1041). That statute provides, in part, that any party adversely affected by a final order or determination of the Board may obtain judicial review under the provisions of the Administrative Review Act. This proceeding must, therefore, relate to a final order. The only difference between this case and most administrative review cases is that the review is initially obtained in the appellate court. We are limited, however, to a review of final orders or determinations.

Boneyard Creek is polluted by reasons of the discharge of contaminants and polluted waters into that creek. A stipulation filed in this proceeding establishes the fact of pollution and the further fact that polluted waters are discharged into the Boneyard through various outlets of storm sewers owned by the City of Champaign. In some instances, the City has had no knowledge of such pollutional discharges and on other occasions it has had knowledge of such pollutional discharges and has made some effort to stop, and has stopped, such discharges. The stipulation further establishes that the University of Illinois has contributed to the pollutional problems of Boneyard Creek by virtue of discharge from its Abbott Power Plant. Thus, under that stipulation there cannot be any debate about the fact of pollutants being discharged into the Boneyard. This proceeding was properly concerned with ascertaining what to do about that pollution and fixing responsibility for corrective action.

The Pollution Control Board rendered an opinion and the parties are not happy with some of the findings. The fact of the matter is, however, that the Pollution Control Board by its order only required the City of Champaign, no later than March 16, 1972, to submit a report to the Environmental Protection Agency. That report was to contain further information and a recitation of steps taken by the City to deal with the pollution and a detailed program to clean up and improve the quality of the water in Boneyard Creek within a reasonable fixed period of time and to the extent practicable. The order specified that upon reciept of the report the Pollution Control Board would decide what further proceedings were then appropriate. No specific affirmative action program was imposed upon the City. Only the filing of a report was required. The City *has now filed* such report. Thus, as to the City of Champaign, there is no order that finally determined anything, but rather the order is purely interlocutory in nature. It is not dispositive of any of the

issues. It does not purport to impose any sanction and it is not final. Inasmuch as it is not final, it is not reviewable. Furthermore, the report has been filed and it seems strange that this court is determining the validity of an order requiring the filing of a report which has already been filed. The issue is moot and as to the City of Champaign the appeal should be dismissed.

As to the University of Illinois, it has admitted to the discharge of pollutants from its Abbott Power Plant. The Board ordered the University to file a report containing a program detailing the corrective measures to be taken by the University to stop the pollution. Here, again, the Board reserved for its future determination what further proceedings might be appropriate after receipt of the report. It does not appear that the University has filed the required report. However, even absent the order of the Pollution Control Board, the University is statutorily required to report to the Environmental Protection Agency on or before December 1 of each year with reference to the same subject matter encompassed in the report. Thus, the order of the Pollution Control Board as to the University essentially only duplicates the statutory duty. (See Ill. Rev. Stat. 1971, ch. 111½, par. 1047.) Thus, as to the University, the order is not final and only requires the doing of that which the law already requires. A review of that order is thus an academic exercise. The appeal should be dismissed as to the University.