RALSTON PURINA COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.,* Respondents.

(No. 12255; ■■■■)

Fourth District—April 3, 1975.

*Rehearing denied May 1, 1975.*

54

TRAPP, J., dissenting.

Yoder, Yoder, Luedtke, & Hartweg, of Bloomington, and August F. Ottinger, of St. Louis, for petitioners.

William J. Scott, Attorney General, of Springfield (Larry R. Eaton and Thomas A. Cengel, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This is an administrative review proceeding initiated in this court pursuant to the provisions of section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1041), the Administrative Review

Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*), and Supreme Court Rule 335 (Ill. Rev. Stat. 1973, ch. 110A, par. 335) to review an order of the Pollution Control Board (PCB). Ralston Purina Company (Ralston), petitioner, was fined $7500 for violation of section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1009(a)), and ordered to file a report with the Environmental Protection Agency and the Pollution Control Board regarding Ralston's compliance with regulations and statutes relating to emissions into the air and air pollution. The PCB retained jurisdiction to enter additional orders as might be found necessary to effectuate compliance.

Upon this administrative review, Ralston contends:

A. That the provisions of the Environmental Protection Act authorizing the imposition of a fine are unconstitutional;

B. That Ralston has not been shown to be guilty of a common-law dust and odor nuisance so as to justify the imposition of a fine;

C. That the fine is excessive;

D. That the PCB abused its discretion in rejecting a proposed stipulation of settlement, which settlement called for no fine to be imposed;

E. That the PCB is not authorized to require Ralston to file a report;

F. That the allegations of the complaint filed before the Board were not sufficiently specific; and

G. That Ralston cannot be found guilty and fined on the basis of the "public testimony," where the identity of witnesses and nature of the testimony were unknown to Ralston prior to the hearing.

■■ In its reply brief, Ralston acknowledges that the first issue has been decided contrary to its contentions in the recent case of *City of Waukegan v. Pollution Control Board*, 57 Ill.2d 170, 311 N.E.2d 146, a decision rendered subsequent to the filing of its petition and brief.

We will consider the remaining contentions of the petitioner essentially in the order presented.

The record in this case as summarized in the order of the PCB establishes that Ralston operates a large feed-manufacturing plant near the city of Bloomington, Illinois, in McLean County. Approximately 160 different feeds are manufactured in the facility, which also has a soybean process plant where soybean oil is manufactured or extracted. The Ralston facility is located in an area that is partly industrial, partly residential. After the Ralston facility was established, a public housing development was located nearby. This housing development—Sunnyside Court—is operated by the Bloomington Housing Authority. Resi-

dents are assigned living facilities in Sunnyside Court by the housing authority.

After the filing of the complaint in this case, prehearing negotiations were undertaken between the parties, and these negotiations resulted in a proposal for settlement. The settlement was transmitted to the PCB and that Board rejected the settlement inasmuch as it had not been concurred in by the Environmental Protection Agency and for the further reason that there was an inadequate factual foundation for it.

The order of the Board, however, did incorporate certain portions of the proposed settlement, and it appears from this record that certain remedial actions contemplated by the settlement have, in fact, been accomplished. We find no error in the action of the PCB in rejecting the settlement for want of an adequate factual recitation. The PCB required by section 33 of the Environmental Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1033(a)) to publish and file a written opinion stating the facts and reasons leading to its decision. This it cannot do without an adequate factual foundation. Its finding that the proposed settlement was deficient in this regard is supported by the record.

■■ We find no merit in Ralston's contention that the complaint was lacking in specificity. Ralston was found to be in violation of the Act as alleged in paragraphs 4 and 6 of the complaint. These paragraphs alleged that Ralston has operated its plant since the specified date so as to cause, threaten, or allow the discharge or emission of fly ash and other contaminants into the environment so as to cause, or tend to cause, air pollution, and that Ralston created such intense odors in the operation of its plant so as to cause, threaten, or allow air pollution. In each instance, the conduct was alleged to constitute a violation of section 9(a) of the Act. Section 12 of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 275(a)) provides that technical errors shall not be grounds for reversal unless it appears that any such technical error materially affected the right of any party and resulted in a substantial injustice. Clearly, in this case, Ralston was put upon specific notice as to its alleged violation. It was found guilty of the violations. We agree with the findings of the PCB that this record contains "overwhelming evidence" of the existence of such violations. Indeed, Ralston does not here contend that such findings are against the manifest weight of the evidence. For that reason, we need not recite the evidence. Any lack of specificity cannot be said to have materially affected the right of Ralston nor resulted in injustice to it. See *City of Monmouth v. Pollution Control Board*, 57 Ill.2d 482, 313 N.E.2d 161.

In *Incinerator, Inc. v. Pollution Control Board*, 59 Ill.2d 290, 319 N.E.2d 794, the supreme court discussed a contention that section 9 of

the Environmental Protection Act was unconstitutional for the reason that it did not contain sufficient standards to determine what constitutes air pollution and the relationship between a section 9(a) violation and other provisions of the Act, specifically, section 33. The court there stated:

"In *City of Monmouth v. Pollution Control Board* (1974), 57 Ill.2d 482, it was alleged that section 9 of the Environmental Protection Act was unconstitutional for the reason that it did not contain sufficient standards for determining what constitutes air pollution. We there held that section 9(a) when read in conjunction with other provisions of the Act, including section 33(c), contains sufficient standards. Likewise in *City of Waukegan v. Pollution Control Board* (1974), 57 Ill.2d 170, we observed that section 33(c) provides a protection against arbitrariness and furnishes guidelines for the Board in reaching its decision. However, in neither of those cases did we give specific attention to the related issues now raised on this appeal.

The provisions here in question rather clearly direct that the unreasonableness of an alleged air-pollution interference must be determined by the Board with reference to the section 33(c) criteria. Air pollution of the second category is not proved unless there has been a showing of an unreasonable interference with the enjoyment of life or property. Section 33(c) sets forth four categories of factors which bear upon the question of reasonableness and specifically directs that the Board 'shall take into consideration' such factors in making its orders and determinations. Section 33(a) requires the Board to file and publish a written opinion stating the facts and reasons leading to its decision. The Board must take into consideration the factors referred to in section 33(c) and must indicate that it has done so in its written opinion by stating the facts and reasons leading to its decision." 59 Ill.2d 290, 295-296.

The language of the supreme court as to the relationship between the factors to be taken into consideration as required by section 33 of the Act and the existence of a violation of section 9 of the Act is in our view conclusively determined by the opinion in *Incinerator*. For that reason, we need not discuss *Mystik Tape v. Pollution Control Board*, 16 Ill.App. 3d 778, 306 N.E.2d 574, *appeal allowed*, 56 Ill.2d 583, *W. F. Hall Printing Co. v. Environmental Protection Agency*, 16 Ill.App.3d 864, 306 N.E. 2d 595, and *Freeman Coal Mining Corp. v. Pollution Control Board*, 21 Ill.App.3d 157, 313 N.E.2d 616.

■■ In this case, as Ralston urges, the evidence of violation is estab-

lished primarily by public testimony—that is, by testimony of witnesses whose names were unknown to Ralston before the hearing and for that reason Ralston had no opportunity for discovery. Ralston's contention in this regard is stated as follows:

> "The question here is the quality of evidence required, rather than the admissibility in the first instance. The fact that this testimony might be admissible does not automatically mean that it and it alone can be the sole foundation for a finding of air pollution and the assessment of a fine."

We find nothing in the Act to indicate that the testimony of so-called "public witnesses" is entitled to less credibility than any other witness. Indeed, section 32 of the Act specifically provides for open hearings and permits written statements or oral testimony by the public.

■■ Ralston's assertion that the PCB is not authorized to require it to file a report is discussed and disposed of by the opinion of this court in *City of Champaign v. Pollution Control Board*, 12 Ill.App.3d 720, 299 N.E.2d 28. It should be noted that in this case there is a specific final order in addition to the requirement for a report, which was not the factual circumstance in *City of Champaign*. Also, in *A. E. Staley Manufacturing Co. v. Environmental Protection Agency*, 8 Ill.App.3d 1018, 290 N.E.2d 892, we noted:

> "[W]here there is an express grant of authority, there is likewise the clear and express grant of power to do all that is reasonably necessary to execute the power or perform the duty specifically conferred. (*Owens v. Green*, 400 Ill. 380, 81 N.E.2d 149.)" (8 Ill. App.3d 1018, 1023, 290 N.E.2d 892, 896.)

Clearly, therefore, when the power exists to order a complete cessation of activities that constitute a violation of the Act, there is, by implication, power to require the submission of reports indicating plans and procedure to bring an alleged violator into compliance.

As to Ralston's final contention that the fine is excessive, we note that in *Incinerator* the supreme court indicated that it would not interfere with a fine unless it could determine that such was arbitrary and excessive. While it is true, as observed in *City of Monmouth*, that the legislative purpose is to provide a method to aid enforcement and that punitive damages are secondary, we cannot say upon this record and in view of the nature, extent and duration of the violation that the fine imposed is excessive, nor can we say that it is arbitrary.

The order of the Pollution Control Board should be, and the same is, confirmed.

Order confirmed.

SIMKINS, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:

I dissent from the opinion in so far as it affirms the imposition of a civil penalty. Upon this record such penalty is purely punitive rather than in aid of the enforcement of the statute. *City of Monmouth v. Pollution Control Board*, 57 Ill.2d 482, 313 N.E.2d 161; *Southern Illinois Asphalt Co. v. Pollution Control Board*, 60 Ill.2d 204.

The order at issue approves the compliance program of Ralston, but the very language of the finding in assessing the penalty[1] demonstrates that it is imposed as punishment for alleged violations occurring prior to the complaint.

The board found that the evidence did not support many of the violations charged. Rather than being recalcitrant, the record shows that some 6 months prior to filing the complaint Ralston had obtained a contract for gas and a new boiler but that such contract was withdrawn by the supplier, and that it was thereafter necessary to find an oil supplier and prepare plans for an oil-fired boiler. The record shows that Ralston had ceased to manufacture fish meal prior to the filing of the complaint, and that machinery and equipment modifying the plant operation in terms of dust control was on order but that delivery was delayed. The record fails to show recalcitrance, and the abatement of the asserted violations imposes the only sanctions reasonably necessary. *Bresler Ice Cream Co. v. Pollution Control Board*, 21 Ill.App.3d 560, 315 N.E.2d 619.

In *Southern Illinois Asphalt Co.*, the court noted that section 33(b) (Ill. Rev. Stat. 1973, ch. 111½, par. 1033(b)) provided for procuring compliance through civil penalties in addition to, or in lieu of, a cease-and-desist order.[2]

Civil penalties have been upheld where there was no attempt to correct certain air violations and the fine was in addition to a cease-and-desist order (*Incinerator, Inc. v. Pollution Control Board*, 59 Ill.2d 290, 319 N.E.2d 794), and where equipment had been installed despite of a denial of a permit to do so. *Mystic Tape v. Pollution Control Board*, 60 Ill.2d 330.

By standards of the cited cases, it seems clear that upon this record the fine imposed is for purely punitive purposes and does not purport to reasonably aid in the enforcement of the statute.

---

[1] "Considering the duration of the offense, a much higher penalty would be appropriate."

[2] "Such order may include a direction to cease and desist * * * and/or the imposition by the Board of civil penalties * * *."