CHEMETCO, INC., Applicant and Respondent-Appellee, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents (The Environmental Protection Agency, Complainant-Appellant).

Fifth District   No. 5—85—0143

Opinion filed January 14, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, of Chicago, and James L. Morgan, Assistant Attorney General, of Springfield, of counsel), for appellant.

R. Emmett Fitzgerald, of Schlafley, Godfrey & Fitzgerald, of Alton, and Johninne Brown Hazard and Edward P. Kenney, both of Bell, Boyd & Lloyd, of Chicago, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This action involves an interlocutory appeal by the Illinois Environmental Protection Agency (hereinafter the Agency) and Chemetco, Inc., from an order of the Pollution Control Board (hereinafter the Board) entered February 20, 1985, rejecting a settlement agreement submitted by the Agency and Chemetco in an enforcement action under the Illinois Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1001 et seq.) (hereinafter the Act). We granted leave to appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). In its rejection of the settlement agreement, the Board certified the following question for interlocutory appeal:

"Whether the Board correctly determined it lacks statutory authority, pursuant to Ill. Rev. Stat. ch. 111½, section 1032, 1033, and 1042, as they relate to Board acceptance of the stipulation of fact and proposals for settlement in enforcement cases to issue opinions and orders in which any Board findings of violation are precluded by the terms of the stipulation and proposal, but in which respondent is ordered to pay a stipulated penalty and to timely perform agreed upon compliance activities."

The facts are as follows:

On January 6, 1983, the Agency filed a complaint with the Board against Chemetco.

On March 7, 1983, the parties submitted a stipulation and proposal for settlement to the Board after a public hearing had been held on March 4, 1983, to solicit comments from the public on the proposed agreement as required by the Act. (A second stipulation and

proposal for settlement was submitted on April 12, 1983, with several minor language changes). The initial settlement agreement provided that although the parties could not agree on whether Chemetco committed the violation, the parties would forego resolution of those issues in the interest of avoiding the expense and uncertainties of litigation, and Chemetco would institute a compliance plan to impose the control of emissions from the facility. Additionally, they would pay a $20,000 penalty to the Environmental Protection Trust Fund.

On October 6, 1983, the Board issued an interim order rejecting the settlement agreement. The grounds for rejecting it were that imposition of the $20,000 stipulated penalty "appears inappropriate under the Act in light of the Board's inability to find violations since (a) the Agency has not withdrawn any of the charges or allegations made in Counts I, II, III, and IV of the January 6, 1983, complaint; and (b) the respondent, although agreeing to the imposition of a penalty, has nonetheless steadfastly denied that any violation occurred ***."

The Board then remanded the cause to the parties.

The parties on March 28, 1984, submitted a joint motion for approval of an amended settlement agreement and the amended settlement agreement. The joint motion noted that neither the Act, the Board's procedural rules, nor the Board's air pollution rules require a respondent to admit alleged violations in order to settle an enforcement case. The joint motion pointed out that previously the Board accepted settlement agreements in other enforcement actions where the respondent agreed to pay a penalty without admitting it had committed the violation alleged by the Agency. The amended settlement agreement substituted a statement that Chemetco neither admitted nor denied the violation in lieu of Chemetco's denial of violation and was also revised to reflect that the proposed compliance plan had been completed. A public hearing was again held on April 6, 1984.

On June 14, 1984, the Board issued an order approving the amended settlement agreement but included a finding that Chemetco had violated Air Pollution Rules 102, 103(b), 203(a), and 203(f)(1) (now 35 Ill. Adm. Code, secs. 201.141, 201.144, 212.321, and 212.301, respectively), and sections 9(a) and 9(b) of the Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 1009(a), (b)). Both parties objected to the inclusion of this finding and moved the Board to modify its order by deleting that finding.

The Board then issued an order that rejected the amended settlement agreement in its entirety. The Board held that its authority to order payment of a penalty and/or implementation of a compliance plan is premised on a finding of violation.

Both parties filed applications for interlocutory appeal, which were granted by this court on April 9, 1984.

■■ We must first determine the appropriate standard of judicial review to apply in the case at hand by examining the Board's decision. It appears the Board's rejection of the settlement agreement was made solely as a matter of law—the Board determined it lacked authority to issue an order approving a settlement agreement unless that order included findings of violation. Where the authority of an administrative body is in question, the determination of the scope of its power and authority is a judicial function, not a question to be finally determined by the administrative agency itself. (*People ex rel. Thompson v. Property Tax Appeal Board* (1974), 22 Ill. App. 3d 316, 322, 317 N.E.2d 121, 125, *cert. denied* (1975), 422 U.S. 1002, 45 L. Ed. 2d 666, 95 S. Ct. 2623.) The court is not bound by an agency's conclusion of law. *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 1036, 355 N.E.2d 230, 233.

The Board tries to characterize its action as a quasi-legislative function. This characterization of the Board's action is more appropriately limited to those instances where the Board is developing general environmental standards through rulemaking or developing individualized standards such as conditions that attach to variance. See *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 270, 346 N.E.2d 212, 218; *Monsanto Co. v. Pollution Control Board* (1977), 67 Ill. 2d 276, 289, 367 N.E.2d 684, 689-90.

Here the Board did not promulgate a rule, they merely reversed their long-standing interpretation of the statute. We note that the Board's technical expertise was not called upon in this determination. Because technical expertise is not a significant factor here, our rule is analogous to reviewing a trial court's decision. (See *Shell Oil v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 346 N.E.2d 212.) We are not bound by the Agency's conclusion of law, and we cannot let stand a decision based upon an erroneous construction of a statute. *Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 20, 385 N.E.2d 793, 795.

The Board believes orders imposing penalties and dictating compliance plans without findings of violation are beyond its statutory authority.

We grant that administrative agencies are limited to the powers vested in them by statute, and their rules and regulations are valid only when they are in furtherance of the intention of the legislature as stated within the four corners of the statute. However, where there is an express grant of authority, there is likewise the clear and

express grant of power to do all that is reasonably necessary to execute the power or perform the duty specifically conferred. *A. E. Staley Manufacturing Co. v. Environmental Protection Agency* (1972), 8 Ill. App. 3d 1018, 1023, 290 N.E.2d 892, 896.

The provisions of the Environmental Protection Act make it clear that the Board is possessed of expertise and that it has broad discretionary powers. *Wells Manufacturing Co. v. Pollution Control Board* (1978), 73 Ill. 2d 226, 234, 383 N.E.2d 148, 151.

Enforcement of the Act is covered in section 33(d) (Ill. Rev. Stat. 1983, ch. 111½, par. 1033(d)), which provides that:

> "All orders issued and entered by the Board pursuant to this section shall be enforceable by injunction, mandamus, or other appropriate remedy, in accordance with Section 42 of this Act."

Section 42(a) of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1042(a)) provides that:

> "Any person that violates any provisions of this Act or any regulation adopted by the Board, or any permit or term or condition thereof, or that violates any determination or order of the Board pursuant to this Act, shall be liable to a civil penalty of not to exceed $10,000 for said violation and an additional civil penalty of not to exceed $1,000 for each day during which violation continues ***."

Pursuant to their inherent authority under section 33(d), the Board promulgated a regulation (35 Ill. Adm. Code 103.180) setting forth the procedure for settlement of enforcement actions. (We note the Act did not specifically provide that enforcement actions could be settled.)

Section 103.180 provides in pertinent part: "The Board may accept, suggest revision in, reject the proposed settlement agreement and stipulation, or direct further hearings in it as appears appropriate." Additionally, a written statement is to be filed, containing, among other things, a "full stipulation of all material fact pertaining to the nature, extent, and causes of the alleged violation"; a proposed compliance plan; and a proposed penalty.

After the parties submit a proposed settlement to the hearing officer, a hearing is conducted and all interested persons may testify. The hearing officer then transmits a record of the hearing to the Board. The Board may then accept, suggest revisions in, or reject the proposed settlement or even direct further hearings.

Thus, from the aforementioned rule, it is undeniable that settlements are of the Board's own making and comport with the purposes of the Act.

The Board contends that the purposes and enforcement of the Act are somehow now aided by findings of violation in settlement. They believe the "stigma" of violation serves an elemental purpose in the Act. However, courts have noted that some "stigma" may attach to a settlement agreement that did not include any findings of violation. In *Poole Foundry & Machine Co. v. National Labor Relations Board* (4th Cir. 1951), 192 F.2d 740, 743, the court stated: "We think the settlement agreement clearly manifests an administrative determination by the Board that some remedial action is necessary ***." Thus, even without the findings of a violation, a respondent's consent to a settlement agreement can carry with it the "stigma" of an admission that its conduct justified remedial action. Furthermore, the legislative declaration of the purpose of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1002) indicates that the principal reason for authorizing the imposition of civil penalties (Ill. Rev. Stat. 1983, ch. 111½, par. 1042) was to provide a method to aid the enforcement of the Act and that punitive considerations were secondary. *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 490, 313 N.E.2d 161, 166.

We note that the existence or lack of findings of violation may be important in the event of subsequent filing of enforcement actions against the same source. (*Illinois Environmental Protection Agency v. Chemetco* (1985), PCB 83—2.) However, the primary goal of the Act is the enhancement of the environment, and settlements that do not contain a finding of violation but do impose a penalty and a compliance plan may more expeditiously facilitate this enhancement.

■ Of great concern to us is the fact the Board is not consistent in its reading of the Act. The Board has accepted and approved settlement agreements in the past where the respondent did not admit any violations. (*Environmental Protection Agency v. Granite City Steel* (1972), 4 Ill. P.C.B. 347 (No. 70—34); *Environmental Protection Agency v. GAF Corp.* (1972), 5 Ill. P.C.B. 553 (No. 72—50); *Environmental Protection Agency v. SCM Corp.* (1980), 37 Ill. P.C.B. 449 (Nos. 78—329, 79—69); *Environmental Protection Agency v. Marquette Cement Manufacturing Co.* (1982), 45 Ill. P.C.B. 245 (No. 77—25); and *Environmental Protection Agency v. Tee-Pak, Inc.,* (1975), 15 Ill. P.C.B. 277 (No. 72—81).) Given the Board's role under the Act and the guidance provided to the Board by the Act, we believe that it is not necessary for the Board to interject findings of violation into settlement agreements that satisfy the goal of the Act.

Additionally, the law generally favors the encouragement of settlements (*Airline Stewards & Stewardesses Association, Local 550 v. American Airlines* (7th Cir. 1978), 573 F.2d 960, 963, *cert. denied,*

439 U.S. 876, 38 L. Ed. 2d 190, 99 S. Ct. 214), and the Board's assertion of implied authority to accept settlement agreements was implicitly upheld in *Ralston Purina Co. v. Pollution Control Board* (1975), 27 Ill. App. 3d 53, 55, 325 N.E.2d 727, 729.

■ The Board asserts that an agency may alter and overturn past administrative rulings and practice and that is consistent with sound principles of administration. (*American Trucking Associations v. Atchison, Topeka, & Santa Fe Ry. Co.* (1967), 387 U.S. 397, 416, 18 L. Ed. 2d 847, 860, 87 S. Ct. 1608, 1618.) However, although we find that an administrative agency may alter its past interpretation and overturn past administrative rulings and practice, we agree with the Agency that such abrupt shifts constitute "danger signals" that the Board may be acting inconsistently with its statutory mandate. Thus, in the very least, a reasoned analysis is required, indicating that prior policies and standards are being deliberately changed, not casually ignored. (*Greater Boston Television Corp. v. Federal Communication Commission* (D.C. Cir. 1970), 444 F.2d 841, 852, *cert. denied* (1971), 403 U.S. 923, 29 L. Ed. 2d 701, 91 S. Ct. 2233.) We note that the Board's February 20, 1985, order fails to provide an adequate analysis necessary to justify such a shift.

Thus we find that the Board has the statutory authority to accept settlement agreements in enforcement cases where findings of violation are precluded by the terms of the stipulation and proposal but where the respondent is ordered to pay a stipulated penalty and to timely perform agreed upon compliance activities.

For the foregoing reasons, the decision of the Pollution Control Board is vacated and remanded back to the Board for further proceedings consistent with the views expressed herein.

Vacated and remanded.

KARNS and HARRISON, JJ., concur.