646 A.2d 738

**CARROLL TOWNSHIP BOARD OF SUPERVISORS, Petitioner,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 13, 1994.

Decided Aug. 10, 1994.

Christina M. Veltri, for petitioner.

Marylou Barton, Asst. Counsel, for respondent.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

CRAIG, President Judge.

The Carroll Township Board of Supervisors (township) appeals an order of the Environmental Hearing Board (board) dismissing the township's appeal from an order of the Pennsylvania Department of Environmental Resources (department) requiring the township to adopt certain ordinances pertaining to sewage facilities planning.

The township presents the following issues on review: 1) whether local governments, such as the township, are the exclusive bodies vested with legislative authority in planning, zoning, and other such functions and thus have the authority

to approve subdivision of land, without sewer module approval, where there is no proposed or contemplated generation of sewage; 2) whether the department has the authority to order the township to adopt ordinances requiring sewer module approval from the department, *before* the township approves subdivision of land; 3) whether the department's order constitutes a taking without just compensation; 4) whether the department's order is unreasonable under the circumstances of this case; and 5) whether the board erred, generally, in denying the township's appeal.

## FACTS

The facts, as averred in the pleadings, and as found by the board, follow. After conducting a review of on-site sewage disposal permits which the township issues, the department found that the township had issued a sewage permit for a lot in a subdivision (Gore subdivision) which had not received sewage facilities planning approval from the department. The township had initially approved the subdivision without obtaining department approval of sewage facilities planning because the lot had been designated as "not for development." In addition, the department discovered that a commercial building had been constructed on another subdivided lot (Dodge subdivision) without a sewage permit or sewage facilities planning approval. Since 1988, the township has approved, without sewage facilities planning approval, approximately twenty-one lots designated as "not for development."

The department, by order dated May 18, 1992, (RR. 4a) directed the township to adopt, within ninety days from the date of that order, regulations and ordinances to prevent the township from issuing building permits and granting final subdivision approvals *before* the department 1) approves a sewage facilities plan revision for the subdivision, pursuant to section 5 of the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. 1535, *as amended,* 35 P.S. § 750.5 or 2) determines that the subdivision proposal qualifies as an exception to the requirement to submit sewage facilities planning to the department for approval.

The township appealed the department's order to the board, contending that 1) the township does not need to submit sewage disposal plans to the department before approving subdivision requests in cases where subdivision occurs but the subdivider has no plans for immediate development of the subdivided property and 2) if the subdivider, at a later date, decides to erect a building on the property, the township would require, at that later stage in the proceedings, sewage facilities planning approval. The township argued that the problem, which had occurred when the Gore subdivision had received a sewage permit without sewage facilities planning approval, was only an isolated incident and had been corrected.

The board found that:

The Supervisors believe that requiring sewage facilities planning approval prior to subdivision approval increases the time and expense of subdividing property, particularly in instances where a farmer may wish to subdivide several lots to obtain ready cash or where a parent may wish to subdivide his property for his children.

Finding of Fact No. 11.

The board found that even if a subdivision is not developed immediately, sewage facilities planning approval is necessary not only to avoid situations like that which occurred with the Gore subdivision, but also because the approval of the subdivision without requiring sewage facilities planning approval until the subdivider seeks a building permit, could affect future sewage disposal needs in the municipality. The board found that problems could later arise if the township approves subdivision requests without obtaining sewage facilities planning approval for the subdivision, in that soil suitability and isolation distances are not addressed until late in the approval process.

Section 105 of the township's subdivision and land development ordinance states:

The *Municipalities Planning Code* (Act 247) and the *Sewage Facilities Act* (Act 537) are two separate acts. Approv-

al of plans under either act can be requested first. In addition, plans can be approved under one act, subject to receiving approval under the other act.

Section 502(a) of the ordinance states in part:

A Planning Module for New Land Development shall be submitted where public or private sewage disposal is contemplated consistent with Section 105 of the Ordinance.... If approval of the plan is sought *without Planning Module approval,* then the plan must state the following or words to that effect:

'Township approval of this subdivision plan *does not include approval for development.* No township permit will be issued for the erection or placement thereon of any building or structure intended for human occupancy (residential or otherwise), nor shall any improvement related to sewerage be installed thereon, unless and until state approval of a New Land Development Planning Module is received.

(Board's September 10, 1993 Opinion, pgs. 8–9) (Emphasis added.)

The board dismissed the township's appeal of the department's order, concluding that the department has the authority to order the township to revise its ordinance to require sewage facilities planning approval from the department before the township approves subdivision requests where the department found that 1) the township issued an on-site sewage disposal permit without the required sewage facilities planning approval, 2) a building had been erected without the above permit or sewage facilities planning approval, and 3) in the past, the township had approved twenty-one subdivision requests without sewage facilities planning approval, treating these subdivisions as "not for development."

The township filed with this court the present appeal from board's order.

## ANALYSIS

■ This court's scope of review for decisions of the board, is limited to determining whether constitutional rights were violated, errors of law committed, or whether the necessary findings of fact are supported by substantial evidence. *Willowbrook Mining Co. v. Department of Environmental Resources*, 92 Pa.Commonwealth Ct. 163, 499 A.2d 2 (1985).

### 1. Sewage Facilities Planning Approval

The township argues that local governments such as the township are the exclusive bodies vested with legislative authority in planning and zoning, and thus the township has the authority to approve subdivision of land in cases where there is *no proposed or contemplated generation of sewage,* without first obtaining sewage facilities planning approval from the department.

The department argues that, although a municipality has the exclusive power to regulate land development, under the Sewage Facilities Act, the department has authority to *order* the township to submit sewage facilities plan revisions *before* approving subdivision requests so that the department may determine whether the plan revisions conform to local planning. The department contends that its authority to monitor sewage planning is not inconsistent with the township's authority to regulate land development.

■ Section 501 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10501 gives the governing body[1] of each municipality authority to regulate subdivisions and land development through a subdivision and land development ordinance. That section requires that all subdivision and land development plats of land be submitted for approval to either the governing body or

1. That section defines "governing body" as: [t]he council in cities, boroughs and incorporated towns; the board of commissioners in townships of the first class; the board of supervisors in townships of the second class; the board of commissioners in counties of the second class through eighth class or as may be designated in the law for the form of government.

a planning agency designated in the ordinance for that purpose. In addition, that section requires that the municipality exercise its powers in accordance with the subdivision ordinance.

Section 503 of the MPC, 53 P.S. § 10503, outlines the contents of the subdivision and land development ordinance; that section states in relevant part:

> The subdivision and land development ordinance *may include*, but need not be limited to:

> (1) Provisions for the submittal and processing of plats ... and provisions for preliminary and final approval and for processing of final approval by stages or sections of development.

> .      .      .      .      .

> (4) Provisions which take into account phased land development not intended for the immediate erection of buildings where streets, curbs, gutters ... *water and sewage facilities* and other improvements may not be possible to install as a condition precedent to final approval of plats, but will be a *condition precedent to the erection of buildings on land* included in the approval plat.

> (Emphasis added.)

The township contends that 1) the above section of the MPC allows the township to approve subdivision plans without sewage facilities treatment planning in circumstances where the land is proposed to be subdivided and no building or development is contemplated, i.e., the division of farmland to settle decedents' estates, the separation of existing dwelling units, or the subdivision of land to correct land disputes, and 2) in such cases, sewage facilities planning approval is required as a condition precedent only to the issuance of building permits before construction on the plat.

The township argues that the department does not have the authority or statutory power to direct the township to take any particular legislative actions in planning and zoning areas which pose no threat to public health.

Section 5(a) of the Sewage Facilities Act, 35 P.S. § 750.5(a), requires each municipality to prepare, in general, an "official" sewage facilities plan, of which the department must approve. That section states in relevant part:

(a) Each municipality shall submit to the department an officially adopted plan for sewage services for areas within its jurisdiction within such reasonable period as the department may prescribe, and shall from time to time submit revisions of such plan as may be required by rules and regulations adopted hereunder or by order of the department. . . .

25 Pa.Code § 71.51(1) states:

A municipality shall revise its *official plan* when:

(1) A *new subdivision is proposed,* except as provided by § 71.55 (relating to exceptions to the requirement to revise the official plan for new land development).

(Emphasis added.)

25 Pa.Code § 71.55 states in relevant part:

*Exceptions to the requirement to revise the official plan for new land development.*

(a) A municipality *does not have to revise its official plan* when the Department determines that the proposal is for the use of individual onlot sewage systems serving detached single family dwelling units in a subdivision of ten lots or less ...

(Emphasis added.)

Section 10(1) of the Sewage Facilities Act, 35 P.S. § 750.10(1) states:

The department shall have the *power and its duty* shall be:

(1) to order municipalities to submit *official plans and revisions* thereto within such time and under such conditions as the rules and regulations promulgated under this act may provide.

(Emphasis added.)

In addition, Section 10(7) of the Sewage Facilities Act, 35 P.S. § 750.10(7) gives the department authority to order a local

agency "to undertake action deemed by the department necessary" to administer section 7 of the Act, 35 P.S. § 750.7, which deals with the permit requirements for on-site disposal systems. 25 Pa.Code § 72.43(c)(6) states in relevant part:

> (c) If the Department finds that a local agency has failed to effectively administer section 7 of the act (35 P.S. § 750.7) or this part, the Department, in addition to other remedies it may seek at law or in equity, *may order* the local agency to take actions the Department deems necessary to obtain effective administration. These actions may include, *but are not limited to:*
>
> .    .    .    .    .
>
> (6) Coordination of permit issuance for sewage systems with building permit issuance or *with subdivision approval under local ordinances* that the local agency may be administering at the time of the order.

(Emphasis added.)

The department contends that the Sewage Facilities Act requires the township to prepare comprehensive planning for sewage facilities, which includes adopting an official sewage facilities plan to be approved by the department. Each time that the municipality receives a subdivision proposal, the department contends that, pursuant to the Sewage Facilities Act, the municipality must revise its official sewage facilities plan for that particular subdivision. The department further asserts that, before a municipality approves a subdivision request, the department must approve a sewage facilities planning module for that subdivision.

The department asserts that the township's approval of subdivisions without sewage facilities planning approval, merely because the subdividers inform the township that they will not develop the land, results in 1) the construction of buildings on the property without the proper sewage facilities planning approval, and 2) the discharge of sewage into soil that does not "renovate" the sewage. The department contends that, by deferring the preparation of sewage facilities planning approval, the township may, in the long term, preclude adequate

development of the property because there may not later be sufficient capacity in sewage collection and treatment systems or adequate renovating soils for on-site disposal may be unavailable.

This court concludes that sections 10(1) and 10(7) of the Sewage Facilities Act, in conjunction with 25 Pa.Code sections 71.51(1) and 72.43(c)(6) do authorize the department to order the township to enact an ordinance prohibiting the township's granting of final subdivision approvals and issuance of building permits before the department either 1) approves a revised sewage facilities plan for the subdivision pursuant to 25 Pa.Code § 71.51(1) or 2) determines that such a revised plan is unnecessary because the subdivision proposal qualifies under 25 Pa.Code § 71.55, which outlines the exceptions to the requirement of a revised official plan.

This court notes that 25 Pa.Code § 71.51(1) requires the township to revise its official sewage facilities plan whenever a new subdivision is *proposed*. In addition, section 503 of the MPC, which outlines the content of subdivision and land development ordinances, does not authorize the township to grant final subdivision approval, without submitting a revised official plan to the department, but merely states that the ordinance *may* include provisions which take into account developments where it may not be "possible" to *install* sewage facilities before final approval of the plat but only in connection with the erection of buildings on the land. That section does not negate the view that sewage facilities planning approval should be a requirement before final subdivision approval.

Also, this court notes that the department does provide a waiver B Form, entitled "Form B Request for Non–Building Waiver of Act 537," which subdividers can submit to the department in cases where the subdivision request involves land to be used for oil or gas lease purposes, where no sewage will be generated, and thus no sewage facilities planning approval is necessary.

## 2. Taking Without Just Compensation

The township contends that the result and effect of the department's May 18, 1992 order is an attempt to require the township to enact an ordinance which is similar to the taking of land in some cases without just compensation, and thus, that order is invalid.

The township asserts that, in cases where a subdivider's subdivision plan does not contemplate the erection of buildings which would generate sewage, the department's order requiring that subdivider to spend money to seek sewer module approval, in effect, constitutes an unconstitutional taking without just compensation.

■ However, the township, which is not a private property owner, has no standing to challenge the department's order as an unconstitutional taking of private property without just compensation. *Ramey v. Department of Environmental Resources*, 15 Pa.Commonwealth Ct. 601, 327 A.2d 647 (1974).

## 3. Reasonableness of Department's Order

■ The township also contends that the department's order is unreasonable because that order is a response to the problem which occurred when the Gore subdivision received a sewage permit without sewage facilities planning approval, and that problem did not occur in the other approved subdivisions which were labeled "not for development."

However, in view of the conclusion that the law requires that the township submit sewage facilities plan revisions to the department before approving subdivision requests, the department's reason for issuing the May 18, 1992 order is irrelevant.

Thus, this court concludes that the board did not commit an error of law in dismissing the township's appeal of the department's order.

Accordingly, we affirm the board's order dismissing the township's appeal.

## ORDER

NOW, August 10, 1994, the decision of the board, dated September 10, 1993, at No. 92–219–W, is affirmed.